**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Thomas MYERS, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 12, 1999.

Filed March 1, 1999.

John W. Packel, Asst. Pub. Defender, Philadelphia, for appellant.

Catherine Marshall, Asst. Dist. Atty., Philadelphia, for Commonwealth, Appellee.

Before KELLY and MONTEMURO *, JJ. and CIRILLO, President Judge Emeritus.

MONTEMURO, J.

¶ 1 This is an appeal from the denial of a petition for writ of certiorari filed with the Philadelphia County Court of Common Pleas. Appellant was convicted of knowing and intentional possession of cocaine, and contends on appeal that the trial court erred in failing to suppress the cocaine seized when police unconstitutionally detained him without probable cause or reasonable suspicion. Appellant further alleges that even if the police had reasonable suspicion for a stop, the subsequent search of his person was not war-

* Retired Justice assigned to Superior Court.

ranted. With this latter assertion we agree, and therefore reverse.

¶ 2 The facts of this case are as follows. Following surveillance of the residence at 2507 S. 62nd Street in Philadelphia which anonymous complaints had identified as the site of a drug trafficking operation, police arrested two persons for narcotics violations on March 25 and 26, 1997. On April 1, 1997, at approximately 5:00 p.m., police observed a man entering the premises and leaving approximately two minutes later. About one hour later, a woman entered the house and quickly left. At approximately 6:30 p.m., Appellant was observed by a surveillance officer who described his actions as follows:

> [Appellant] walked up, knocked on the door, entered. Approximately two minutes later, he exited. I believe I saw something in his hand but, again, it was closed. He then placed it in his pocket.

(N.T. Suppression, 7/14/97, at 17–18). Appellant then entered his vehicle and drove away.

¶ 3 Appellant was followed, pulled over, removed from his vehicle and patted down. From the same pocket into which Appellant had placed his hand after emerging from 2507 S. 62nd Street, the officer who conducted the pat down retrieved two plastic packets containing crack cocaine. At the suppression hearing, the police officer testified in response to the prosecutor's question that the search had been conducted for weapons.

¶ 4 When reviewing an order denying a motion to suppress evidence, this Court must determine whether the record supports the factual findings, inferences and legal conclusions of the trial court. *Commonwealth v. Fitzpatrick*, 446 Pa.Super. 87, 666 A.2d 323, 325 (1995). We may only consider evidence of the Commonwealth's witnesses and so much of the evidence presented by the defendant which remains uncontradicted when fairly reading the record as a whole. *Id.* Since Appellant alleges that the stop and the frisk were both unlawful, "[w]e must examine the investigating officer's actions at two levels of inquiry: the legality of the stop, and the propriety of the officer['s] actions subsequent to the stop."

*Commonwealth v. Jackson,* 359 Pa.Super. 433, 519 A.2d 427, 429 (1986). After completing such an analysis, it is clear that the trial court erred in refusing to suppress the evidence in this case.

¶5 Contrary to the Commonwealth's assertion, under Pennsylvania law the police did not have probable cause to arrest Appellant. "Probable cause justifying a warrantless arrest is determined by the 'totality of the circumstances.'" *Commonwealth v. Banks,* 540 Pa. 453, 455, 658 A.2d 752, 752–753 (1995)(quoting *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Where the facts and circumstances within a police officer's knowledge would warrant a person of reasonable caution to believe that an offense has been committed, probable cause typically exists. *Commonwealth v. Lechner,* 454 Pa.Super. 456, 685 A.2d 1014, 1016 (1996). However, "more than a mere suspicion or a good faith belief on the part of the police officer" is required. *Id.*

¶6 In the case before us, Appellant entered a house that was under surveillance and was seen leaving approximately two minutes later. The surveillance officer thought he saw something in Appellant's hand but could not be certain. These facts do not constitute probable cause. *See Banks, supra.*

¶7 This case is distinguishable from *Commonwealth v. Burnside,* 425 Pa.Super. 425, 625 A.2d 678, 679 (1993), cited by the Commonwealth in support of the proposition that a veteran officer can identify illegal drug activity sooner than a layperson. There, an officer observed the defendant with a handful of small blue plastic packets of the type he knew from experience were commonly used to package cocaine. Here no recognition factor was involved as the officer was unable to ascertain whether Appellant was holding anything at all. Further, the Commonwealth has offered no authority for the proposition that probable cause to arrest an alleged drug buyer exists under circumstances similar to those which apply to *drug dealers* observed in the act of distributing drugs. *See, e.g.,*

*Commonwealth v. Stroud,* 699 A.2d 1305, 1307 (Pa.Super.1997)(police had probable cause to arrest drug dealer who was twice observed exchanging for cash objects removed from his shoe); *Commonwealth v. Cramutola,* 450 Pa.Super. 345, 676 A.2d 1214, 1215 (1996)(defendant arrested for dealing drugs from her home after warrant was obtained as a result of surveillance); *Commonwealth v. Montavo,* 439 Pa.Super. 216, 653 A.2d 700, 704, *appeal denied,* 541 Pa. 636, 663 A.2d 689 (1995)(same); *Commonwealth v. Dennis,* 417 Pa.Super. 425, 612 A.2d 1014, 1015 (1992), *appeal denied,* 535 Pa. 654, 634 A.2d 218 (1993)(police had probable cause to arrest defendant who attempted to flee after making an exchange in doorway of known drug house).

¶8 In *Stroud, supra,* this Court reiterated the proposition that "[e]very commercial transaction between citizens on a street corner when unidentified property is involved does not give rise to probable cause to arrest." *Stroud,* 699 A.2d at 1308 (internal citations omitted). It follows that when no transaction is observed, probable cause to arrest someone entering a house that happens to be under surveillance is lacking.

¶9 However, despite the absence of probable cause to arrest Appellant, the officers did have reasonable suspicion to stop him. It is well-established that a police officer, relying on specific and articulable facts which, if taken together with rational inferences from those facts, reasonably warrant a belief that criminal activity is afoot, can lawfully make an investigatory *Terry*[1] stop. *Commonwealth v. Martinez,* 403 Pa.Super. 125, 588 A.2d 513, 514 (1991), *appeal denied,* 530 Pa. 653, 608 A.2d 29 (1992). The facts and circumstances surrounding this case give rise to a belief in the occurrence of criminal conduct.

¶10 The police had received at least four citizen complaints regarding drug sales occurring at 2507 S. 62nd Street. While conducting surveillance of the property, police had arrested two drug purchasers the weekend prior to Appellant's arrest. On the day Appellant was arrested, the police ob-

---

1. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

served two other individuals enter and exit the property after only a few minutes – a male at 5:00 p.m. and a female at 6:00 p.m. When the police saw Appellant do the same at approximately 6:30 p.m., they had reasonable suspicion to stop him for investigative purposes, since in the eyes of a trained officer, the surrounding circumstances give rise to reasonable suspicion that criminal activity is afoot. *See Martinez*, 588 A.2d at 514.

¶ 11 Appellant relies on *Commonwealth v. Melendez*, 544 Pa. 323, 676 A.2d 226 (1996) to support his assertion that the police did not have reasonable suspicion to stop him. Such reliance is misplaced. In *Melendez* the "[p]olice had observed no criminal activity on the part of Melendez, but stopped and searched her because she was a suspect in a felony investigation." *Id.* at 353, 676 A.2d at 227. The case before us is entirely distinguishable on the basis of what the police observed at this location immediately prior to Appellant's arrest. The police in *Melendez* had no "basis to believe that Melendez was engaged in any criminal activity at the time of the stop," *Id.* at 357, 676 A.2d at 229, while the police here could point to specific and articulable facts which justified the stop of Appellant.

¶ 12 However, although reasonable suspicion to stop Appellant existed, the subsequent frisk was not legally justified.

> To justify a frisk incident to an investigatory stop, the police need to point to **specific and articulable** facts indicating the person they intend to frisk may be armed and dangerous; otherwise, the talismanic use of the phrase 'for our own protection,' a phrase invoked by the officers in this case, becomes meaningless.

*Commonwealth v. Patterson*, 405 Pa.Super. 17, 591 A.2d 1075, 1078 (1991) (emphasis added). *See also In the Interest of S.J.*, 551 Pa. 637, 643, 713 A.2d 45, 48 (1998)("If, during the course of a valid investigatory stop, an officer observes unusual and suspicious conduct on the part of the suspect which leads him to reasonably believe that the suspect may be armed and dangerous, the officer may conduct a pat-down of the suspect's outer garments for weapons.").

¶ 13 When testifying as to why Appellant was frisked, the officer stated "for my own protection." (N.T. Suppression Hearing, 7/14/97, at 19). When asked what he was searching for, the officer responded: "For weapons. **We stop people all the time and they have weapons on them.** For my own protection and Officer Jones' protection." (*Id.*)(emphasis added). Indeed, the trial court realized that the officer did not pat Appellant down for his own safety, but rather, to retrieve the drugs he believed were in Appellant's pocket. *See* N.T. Suppression, 7/14/97 at 20.

¶ 14 In *In the Interest of S.J.*, *supra*, a police officer noticed a group of twelve males standing on a street corner in a high crime area known for drug activity, and detected an odor of marijuana emanating from their location. *S.J.*, 713 A.2d at 46, 48. When he was able to get a closer look, the officer observed several individuals actually smoking marijuana. *Id.* at 45. When the officer approached, the group began to disburse and the officer stopped S.J. *Id.* Our Supreme Court found that these circumstances amounted to reasonable suspicion. *Id.* at 47. However, in finding that the subsequent frisk was unlawful, the Court stated:

> The record herein is devoid of any evidence that [the officer] had reason to believe Appellant was armed and dangerous. There was no testimony that Appellant's clothing had any unusual bulges or any testimony that Appellant made any furtive movements giving rise to [the officer's] suspicions that Appellant was armed and dangerous.

*Id.* at 48.

¶ 15 Similarly, there is no such testimony in the case before us.

¶ 16 The Commonwealth's reliance on *Patterson, supra*, to justify the patdown is misplaced. There the frisk occurred when the defendant was stopped after making a disturbance during the early morning hours in an alley behind a known crack house. Here, Appellant, a suspected purchaser of drugs, was stopped in his own vehicle during the early evening hours on a public street. There was no testimony, and no evidence whatsoever, that Appellant was a dealer in-

volved in drug trafficking. *Compare Commonwealth v. Hall*, 713 A.2d 650, 653 (Pa.Super.1998) (frisk lawful where defendant approached officer with his hand in his pocket and refused to remove it). "The absence of any specific, articulable facts establishing that Appellant was armed and dangerous renders the frisk unlawful." *S.J.*, 713 A.2d at 48 (footnote omitted).

¶ 17  Since the search of Appellant was unlawful, any evidence obtained as a result thereof should have been suppressed as "fruit of the poisoned tree." *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

¶ 18  If the reasons for the frisk given by the officer in this case had been found to be sufficient, it follows that the police, after stopping any vehicle, could remove the driver or passengers and conduct a frisk since the officers "stop people all the time [who] have weapons on them." (N.T. Suppression hearing, 7/14/97 at 19). While this Court acknowledges the importance of protecting police officers in the performance of their duties, the law requires that an officer have some reason to believe that a particular suspect is armed and dangerous.

¶ 19  Order reversed.