J-A01021-16

2016 PA Super 91

COMMONWEALTH OF PENNSYLVANIA

v.

ANTHONY STILO

Appellant

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 2838 EDA 2014

Appeal from the Judgment of Sentence July 23, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): MC-51-CR-0043949-2013

BEFORE:  LAZARUS, J., OTT, J., and STEVENS, P.J.E.[*]

OPINION BY OTT, J.:                                    Filed: April 28, 2016

Anthony Stilo appeals from the July 23, 2014, judgment of sentence imposed by the Philadelphia County Municipal Court on his conviction for possession of a controlled substance,[1] as confirmed by the order entered in the Court of Common Pleas of Philadelphia County denying his petition for writ of *certiorari*.  In this appeal, Stilo challenges the denial of his suppression motion.  Based upon the following, we affirm.

The common pleas court judge summarized the procedural and factual background of this case, as follows:

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 35 P.S. § 780-113(a)(16). Stilo was sentenced to serve a term of six months' probation.

On November 13, 2013, Defendant Anthony Stilo, was arrested and charged with Knowing and Intentional Possession of a Controlled Substance under 35 [P.S.] § 780-113(a)(16). On June 9, 2014, the Honorable Martin S. Coleman denied [Stilo's] motion to suppress any and all physical evidence recovered during his arrest. On July 23, 2014, the Honorable David C. Shuter found [Stilo] guilty of Knowing and Intentional Possession of a Controlled Substance and sentenced him to six months reporting probation. On August 20, 2014, [Stilo] filed a Petition for Writ of Certiorari which this Court denied on September 22, 2014.

****

On June 9, 2014, a motion to suppress physical evidence was held before the Honorable Martin S. Coleman. At that hearing, Police Officer Bruce Cleaver testified and his testimony established the following.

On November 13, 2013, at approximately 2:45 p.m. Officer Cleaver set up surveillance outside [address deleted] Kelvin Avenue due to receipt of a narcotics complaint. N.T. 6/9/14 pp. 6, 13. At approximately 3:00 p.m., [Stilo] arrived at the location as a passenger in a white Ford Explorer, N.T. 6/9/14 p. 6. [Stilo] exited the vehicle and entered the basement of the property where he remained for approximately three minutes. N.T. 6/9/14 p. 6. As [Stilo] exited the property, an unknown white male arrived on location in a red Ford pickup truck and entered the property. N.T. 6/9/14 pp. 6-7, 12. [Stilo] re-entered the Ford Explorer and waited a few minutes. N.T. 6/9/14 p. 7. Shortly thereafter, the unknown white male exited the property and entered his truck. N.T. 6/9/14 p. 7. Both [Stilo] and the male left the location simultaneously. N.T. 6/9/14 pp. 7, 12. [Stilo] was followed, stopped, and removed from the vehicle. N.T. 6/9/14 pp. 7, 11. Officer Cleaver spoke to [Stilo] and [Stilo] gave the officer a clear Ziploc bag containing marijuana and he was arrested. N.T. 6/9/14 p. 7; 11. Following his arrest, [Stilo] was searched and recovered from his person were: four white Ativan pills, seventeen round blue Oxycodone pills, and two round white Oxycodone pills. N.T. 6/9/14 p. 7.

Common Pleas Court Opinion, 2/12/2015, at 2.

In Stilo's motion to suppress the evidence, he contended police lacked reasonable suspicion that he was engaged in criminal activity when they stopped his vehicle. The municipal court judge denied the motion, and Stilo was convicted and sentenced, as stated above. Stilo then filed a petition for writ of *certiorari* with the court of common pleas, which denied the petition. This appeal followed.[2]

Stilo raises the following argument for our review:

[T]he trial court err[ed] in denying [Stilo's] motion to suppress physical evidence in this case, where police merely saw him enter and leave after a few minutes a house police believed, based on an anonymous tip, was a drug house, where police did not see any transaction, cash, suspected contraband, or any other item, and where police saw just one other person enter and leave[.]

Stilo's Brief at 3.

The principles that guide our review are as follows:

Our standard of review in addressing a challenge to the denial of a suppression motion is

limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we

_____

[2] Stilo timely complied with the order of the court of common pleas to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b).

are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

**Commonwealth v. Jones**, 605 Pa. 188, 988 A.2d 649, 654 (Pa. 2010), *cert. denied*, 562 U.S. 832, 131 S. Ct. 110, 178 L. Ed. 2d 32 (U.S. 2012) (citations, quotations and ellipses omitted). Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress. **See In Interest of L.J.**, 79 A.3d 1073, 1083-1087 (Pa. 2013).

It is well-established that there are three categories of interaction between citizens and police officers. As our Supreme Court has clearly articulated:

The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

**Commonwealth v. Gutierrez**, 2012 PA Super 14, 36 A.3d 1104, 1107 (Pa. Super. 2012), *appeal denied*, 616 Pa. 643, 48 A.3d 1247 (Pa. 2012), *quoting* **Commonwealth v. Ellis**, 541 Pa. 285, 662 A.2d 1043, 1047 (Pa. 1995) (citations omitted). …

… In [**Commonwealth v.**] **Foglia**, [2009 PA Super 138, 979 A.2d 357 (Pa. Super. 2009) (*en banc)*, *appeal denied*, 605 Pa. 694, 990 A.2d 727 (Pa. 2010),] this Court set forth the standard that must be applied in determining whether an investigative detention of an individual is constitutionally sound:

A police officer may detain an individual in order to conduct an investigation if that officer reasonably

suspects that the individual is engaging in criminal conduct. This standard, less stringent than probable cause, is commonly known as reasonable suspicion. In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Id.* at 360 (citations and internal quotes omitted).

***Commonwealth v. Ranson***, 103 A.3d 73, 76–77 (Pa. Super. 2014), *appeal denied*, 117 A.3d 296 (Pa. 2015).

Here, Stilo argues Philadelphia Police Officer Bruce Cleaver,[3] and his partner, Officer Keenan, lacked reasonable suspicion that he was engaged in criminal activity and "simply stopped the first of two separate individuals they saw enter and exit the house, individuals who, in a residential area of Philadelphia at 3:00 p.m., could have come for any number of [innocent] reasons[.]" Stilo's Brief at 23–24. Stilo contends "[t]he arrival of the two [individuals] at the same time could have been mere coincidence." *Id.* at 24. Stilo maintains police observed no transactions or furtive behavior; the area was not described as a high crime area or area where drug sales regularly occur; and little information was presented about the officers'

---

[3] Only Officer Cleaver testified at the suppression hearing.

training or experience. **See** Stilo's Brief at 17–18. In support of his argument, Stilo distinguishes **Commonwealth v. Myers**, 728 A.2d 960 (Pa. Super. 1999), which the common pleas court relied on in denying his petition for writ of *certiorari*. In addition, Stilo contrasts his case with **Commonwealth v. Patterson**, 591 A.2d 1075 (Pa. Super. 1991).

In **Myers**, police officers began conducting surveillance of a home in Philadelphia after receiving a number of complaints that the home was the site of a drug trafficking operation. While conducting surveillance, the police arrested two persons for narcotics violations on March 25 and 26, 1997. On April 1, 1997, at approximately 5:00 p.m., the police observed a man enter the home, and exit two minutes later. Approximately one hour later, the officer observed a woman enter the house and then quickly depart. At 6:30 p.m., the officers observed Myers knock on the door of the home, gain admittance and depart approximately two minutes later. The surveillance officer thought he saw something in Myer's hand, but it was closed. He then placed it in his pocket, entered his vehicle, and drove away. The officers followed, pulled him over, removed him from his vehicle, and patted him down. During this pat-down, the officers discovered two plastic packets of crack cocaine. **See id.,** 728 A.2d at 961. Myers was convicted of knowing and intentional possession of cocaine.

On appeal, this Court held that the officers did have reasonable suspicion[4] to stop Myers, explaining:

> The police had received at least four citizen complaints regarding drug sales occurring at 2507 S. 62nd Street. While conducting surveillance of the property, police had arrested two drug purchasers the weekend prior to Appellant's arrest. On the day Appellant was arrested, the police observed two other individuals enter and exit the property after only a few minutes - a male at 5:00 p.m. and a female at 6:00 p.m. When the police saw Appellant do the same at approximately 6:30 p.m., they had reasonable suspicion to stop him for investigative purposes, since in the eyes of a trained officer, the surrounding circumstances give rise to reasonable suspicion that criminal activity is afoot.

*Id.* at 962–963 (citation omitted).

In **Patterson**, officers were conducting surveillance of a crack house identified by neighbors. Between 2:30 and 4:30 a.m., the officers observed five people enter the rear driveway of the home and knock on the back door, waiting for someone to answer. When questioned by police, none of the individuals could logically explain their presence in the dark alley entrance of a reputed crack house. Somewhere between 4:30 and 4:55 a.m., police saw Patterson enter the alley and knock on the crack house door. Police asked him what he was doing, and he responded he had come to see someone. Fearing for their safety in the dark early morning hours, the officers frisked

---

[4] The **Myers** Court rejected the Commonwealth's argument police had probable cause to arrest Myers. The Court stated: "[W]hen no transaction is observed, probable cause to arrest someone entering a house that happens to be under surveillance is lacking." **Id.**, 728 A.2d at 962.

Patterson and found a handgun with ten live rounds of ammunition in the clip. Following his arrest, police searched him and found 54 vials of crack cocaine and $ 220 in cash. **Patterson**, 591 A.2d 1076–1077. Patterson was convicted of possession of a controlled substance, possession with intent to distribute, carrying a firearm without a license, and carrying a firearm in a public place.

On appeal, Patterson challenged the denial of his suppression motion. With regard to the stop, this Court concluded:

> In the instant matter, police received numerous complaints regarding drug sales conducted from the back door of 7510 North 20th Street. These tips were corroborated by suspicious activity occurring in the alley behind the house the evening of the appellant's arrest. Within a two hour period in the early morning hours of September 3, 1988, police witnessed five suspicious looking subjects approach and knock on the rear door of the crack house, waiting for someone to answer. When asked, none of the individuals could explain to police for what reason or why they were there. Appellant was the sixth person within two and one-half hours to enter the alley and knock on the crack house door. The combination of the neighbors' reports and the suspicious heavy foot traffic during the wee hours of the morning in the dark back alley of a suspected crack house is sufficient to justify a stop.

*Id.* at 1077–1078.

Stilo argues that in his case police had substantially less information than police had in **Myers** and **Patterson**, and therefore the court erred in denying his motion to suppress. We are not persuaded by this argument.

Here, Officer Cleaver testified police had received a "narcotics complaint about [the] specific address." N.T., 6/9/2014, at 13. Upon

- 8 -

receiving the complaint, Officer Cleaver determined the owner of the residence had been previously arrested by the narcotics unit. *See id.* at 13. Officer Cleaver was sent to the scene immediately, and set up surveillance at 2:45 p.m., on November 13, 2013. Fifteen minutes later, at approximately 3:00 p.m., he saw Stilo pull up as a passenger in a white Ford Explorer, exit the vehicle, and walk into the basement of the property, which was a converted garage with a door. *Id.* at 6. After three minutes, Stilo exited the property. *See id.* As Stilo was walking out of the property, another male arrived in a red pickup truck and went into the property. Stilo returned to the passenger seat of the Ford Explorer and waited a few minutes. The second individual then came out of the property and returned to his pickup truck. *See id.* at 6–7. Both vehicles left at the same time, and police stopped Stilo's vehicle. *See id.* at 7, 12. Officer Cleaver testified that he had been a police officer for 16 years, had worked in the narcotics unit for six years, and had conducted several narcotics surveillances. *See id.* at 9. He had seen "this type of interaction where an individual goes into a house and comes out a short time later." *Id.* at 9. He further stated that, "With the two males walking in at the same time, I believe it was a drug transaction going on." *Id.*

Based on our careful review, we find, contrary to Stilo's argument, that *Myers* and *Patterson* support the suppression court's decision to deny the motion to suppress. Furthermore, to the extent that Stilo claims "Officer

Cleaver should have exercised more discipline to establish a pattern before stopping Mr. Stilo,"[5] the Commonwealth correctly points out this Court has held that "[t]he existence of arguably more persuasive means of corroboration [i.e., controlled buy, observations of specifically prohibited transactions, or confirmation with other informants] did not by itself render insufficient that information which was produced by police action." ***Commonwealth v. Woods***, 590 A.2d 1311, 1314 (Pa. Super. 1991).[6]

When police received the "narcotics complaint," Officer Cleaver "verified"[7] the complaint in learning that the owner of the subject residence had previously been arrested on drug charges by members of his narcotics unit. As such, police had information of a prior nexus of the house to drugs. During surveillance, police witnessed the same suspicious activity of Stilo and another individual, separately entering and then leaving the subject residence after a very brief visit, within moments of each other. This activity was viewed through the eyes of a trained officer, Officer Cleaver, who believed it was a drug transaction.

Stilo's argument fails because "[a] suppression court is required to take[] into account the totality of the circumstances—the whole picture."

---

[5] Stilo's Reply Brief, at 4. **See also** Stilo's Brief at 24 ("The officers should have investigated further before stopping anybody.").

[6] **See** Commonwealth's Brief at 11, *citing* **Woods**.

[7] N.T., 6/9/2014, at 13.

*Commonwealth v. Carter*, 105 A.3d 765, 769 (Pa. Super. 2014) (quotations and citation omitted), *appeal denied*, 117 A.3d 295 (Pa. 2015). "[E]ven in a case where one could say that the conduct of a person is equally consistent with innocent activity, the suppression court [is not] foreclosed from concluding that reasonable suspicion nevertheless existed." *Id.* at 772. "In conducting a reasonable suspicion inquiry, a suppression court is required to afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience[.]" *Id.* at 773 (quotations and citation omitted).

Applying these tenets, we find no error in the suppression court's conclusion that police had reasonable suspicion to stop Stilo's vehicle.[8] Accordingly, we affirm.

Judgment of sentence affirmed.

_____

[8] We note Stilo's argument that the common pleas court judge, in her discussion of the facts giving rise to reasonable suspicion that criminal activity was afoot, misstated the sequence of events in stating that "Officer Cleaver received information that on November 12, 2013, numerous narcotics and the sum of $10,315.00 had been recovered from the same location." Common Pleas Court Opinion, 2/12/2014, at 4. The record reflects that the subject residence was not searched pursuant to a warrant until after Stilo's arrest on November 13, 2013. *See* N.T., 6/9/2014, at 5, 7–8. This misstatement in the Rule 1925(a) opinion, however, has no bearing with respect to the suppression ruling that was made by the municipal court judge, and is irrelevant to our review of suppression hearing record and our analysis.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/28/2016