J-S11035-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| EDWARD RIVERA, | : | |
| | : | |
| Appellant | : | No. 2920 EDA 2014 |

Appeal from the Judgment of Sentence July 14, 2014,
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s):  MC-51-CR-0012203-2014

BEFORE:  FORD ELLIOTT, P.J.E., OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED MAY 04, 2016**

Edward Rivera ("Rivera") appeals from the Order of the common pleas court, which denied his Petition for Writ of *Certiorari* of the judgment of sentence entered by the Municipal Court of Philadelphia[1] following his conviction of possession of a controlled substance and purchase of a

---

[1] An appellant convicted in Philadelphia's Municipal Court has two appellate options:

> Pennsylvania Rule of Criminal Procedure 1006(1)(a) provides that a defendant convicted in Philadelphia Municipal Court has the right to request either a trial *de novo* or file a petition for a writ of *certiorari* with the Philadelphia Court of Common Pleas. This Court has held that when a defendant files a petition for a writ of *certiorari*, the Philadelphia Court of Common Pleas sits as an appellate court.

**Commonwealth v. Coleman**, 19 A.3d 1111, 1118-19 (Pa. Super. 2011) (citations omitted).  A petition for writ of *certiorari* asks the common pleas court to review the record made in the Municipal Court.  **Commonwealth v. Williams**, 125 A.3d 426, 431 (Pa. Super. 2015).

controlled substance from an unlicensed seller.[2]  We vacate the Order of the

common pleas court, vacate Rivera's judgment of sentence, and discharge

Rivera.

In its Opinion, the common pleas court set forth its factual findings

relevant to the instant appeal as follows:

> On April 16, 2014, Officer [Bryan] Outterbridge ["Officer Outterbridge"] and [another police officer] went to 3116 North 15th Street [in Philadelphia] to observe the sale of illegal narcotics[,] after receiving a complaint that drugs were being sold out of the residence.  The residence is a rooming house, located in a high drug area, known for the sale of marijuana, crack, and heroin[,] where Officer Outterbridge had made more than a hundred arrests.
>
> At approximately 11:45 a.m., an unknown male wearing a tan jacket approached and knocked on the door.  A second unknown male wearing a red sweatshirt answered, letting the first man inside.  After approximately forty-five seconds, the man in the tan jacket emerged and walked northbound on 15th [S]treet.  Though Officer Outterbridge relayed flash information to have the man stopped, he was never found.  At approximately 12:10 p.m., a second unknown male in a tan jacket and black pants knocked on the door.  The same male in the red sweatshirt let him inside[,] where both remained for approximately forty-five seconds.  Upon leaving, the man in the tan jacket and black pants headed northbound on 15th Street, but then turned west onto Allegheny [Avenue] and entered an apartment building before he could be stopped by police.  Finally, at approximately 12:30 p.m., a man wearing a red, white, and blue shirt, later identified as [Rivera], approached 3116 North 15th Street. [Rivera] knocked on the door in the same manner as the two men before him.  He[,] too[,] was greeted by the man wearing the red sweatshirt and, like the two men who preceded him[,] entered the residence.  After being out of view for approximately forty-five seconds, [Rivera] returned to the street and walked southbound on 15th Street, then east on Clearfield [Street].

---

[2] 35 P.S. § 780-113(a)(16), (19).

Officer Outterbridge has been a Philadelphia police officer for twenty-one years[,] with five years of experience working narcotics. Throughout his career, Officer Outterbridge has received specialized training in narcotics. He is certified to test various narcotics, including marijuana, crack, cocaine, and heroin. He is also trained in the packaging of narcotics and how they are distributed. Because he had made numerous arrests in the area, and based on his years of experience as a member of the narcotics team, Officer Outterbridge believed that what he saw on April 16, 2014 was a narcotics transaction. Officer Outterbridge had observed similar situations in the past; he had seen other narcotics sales from residences[,] and this "fit the description." Based on this belief, Officer Outterbridge relayed flash information to back-up officers. Officer Bradley responded and stopped [Rivera], recovering one heat-sealed packet containing an off-white chunky substance: crack cocaine. A field drug test was conducted on this packet and it came back positive for the presence of cocaine base.

Trial Court Opinion, 7/15/15, at 1 (citations omitted). The Commonwealth subsequently charged Rivera with the above-described offenses.

The trial court concisely summarized the procedural history following Rivera's arrest as follows:

[Rivera] appeared before the Municipal Court on July 14, 2014[,] with a Motion to Suppress, which was denied. [Rivera] was subsequently found guilty of knowing and intentional possession of a controlled substance [and purchase of a controlled substance from an unlicensed seller,] and was sentenced to eighteen months [of] reporting probation. On October 7, 2014, [Rivera] appeared before the Court of Common Pleas with a [Petition for] Writ of *Certiorari* from the denial of the Motion to Suppress.[3] The [trial c]ourt denied the [Petition for] Writ of *Certiorari* on that same day. This appeal followed.

*Id.* at 1 (footnote added).

On appeal, Rivera presents the following claim for our review:

---

[3] Rivera had filed his Petition for Writ of *Certiorari* on August 12, 2014.

Did not the courts below err in denying [Rivera's M]otion to [S]uppress physical evidence[,] where police saw two unknown individuals briefly enter and leave a house police believed was a drug house, and later saw [Rivera] briefly enter and leave the same house, but police observed no transactions, exchanges, or contraband?

Brief for Appellant at 3.

In reviewing an order denying a suppression motion,

[a]n appellate court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, it is also well settled that an appellate court is not bound by the suppression court's conclusions of law.

*Commonwealth v. Caple*, 121 A.3d 511, 516-17 (Pa. Super. 2015)

(citations omitted).

With respect to factual findings, we are mindful that it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented. However, where the factual determinations made by the suppression court are not supported by the evidence, we may reject those findings. Only factual findings which are supported by the record are binding upon this Court.

*Id.* (citation omitted).

Rivera claims that the police officers lacked probable cause to arrest him, and accordingly, the suppression court erred in not suppressing all evidence seized from him as a result of the illegal arrest. Brief for Appellant at 8. Rivera acknowledges the Commonwealth's evidence that the officers had received complaints about drugs being sold from the residence at issue,

- 4 -

and that Officer Outterbridge and his partner set up surveillance of that property. *Id.* Rivera further acknowledges the Commonwealth's evidence that the area was a high-drug crime area, and that Officer Outterbridge was a 21-year veteran of the police force, with five years of narcotics experience. *Id.* Notwithstanding, Rivera claims that the Commonwealth

> failed to establish a nexus between [Officer Outterbridge's] experience and his observations sufficient to create probable cause where the officer observed nothing that was immediately identifiable as unlawful. He saw three people enter and leave a rooming house that police received anonymous complaints about regarding drug sales. [Officer Outterbridge] saw no exchanges, or contraband, or money, or any evidence of drug sales.

*Id.* at 11. In support, Rivera compares the circumstances in this case to those presented in **Commonwealth v. Myers**, 728 A.2d 960 (Pa. Super. 1999). Brief for Appellant at 9-10.

In its Opinion, the trial court acknowledged Rivera's reliance on **Myers**, but reasoned that Rivera had "neglect[ed] to consider the impact of [**Commonwealth v. Thompson**, 985 A.2d 928 (Pa. 2009),] and its progeny." Trial Court Opinion, 7/15/15, at 5. The trial court considered Officer Outterbridge's training and experience, and deemed it significant that Officer Outterbridge had witnessed several identical instances of persons entering and leaving the residence. *Id.* at 6-7 (citing **Commonwealth v. Delvalle**, 74 A.3d 1081 (Pa. Super. 2013)). Based upon this evidence, the trial court concluded that the Commonwealth had established probable cause to arrest Rivera. Trial Court Opinion, 7/15/15, at 8.

"The Fourth Amendment to the [United States] Constitution and Article I, Section 8 of [the Pennsylvania] Constitution protect citizens from unreasonable searches and seizures." *Commonwealth v. McAdoo*, 46 A.3d 781, 784 (Pa. Super. 2012). Generally, the police must obtain a warrant to arrest a suspect in a public place. *In the Interest of R.P.*, 918 A.2d 115, 120 (Pa. Super. 2007). "However, the police may arrest a suspect without a warrant if the officer has probable cause to believe a misdemeanor was committed in the presence of the police officer." *Id.* at 120-21.

"To be constitutionally valid, a warrantless arrest must be supported by probable cause." *Commonwealth v. Agnew*, 600 A.2d 1265, 1271 (Pa. Super. 1991) (citation omitted).

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

*Commonwealth v. Martin*, 101 A.3d 706, 721 (Pa. 2014) (emphasis omitted) (quoting *Thompson*, 985 A.2d at 931 (Pa. 2009) (citations and quotation marks omitted)). "When an officer makes an unlawful arrest, any evidence seized during a search incident to the arrest must be suppressed." *Commonwealth v. Clark*, 735 A.2d 1248, 1251 (Pa. 1999).

Rivera relies upon the Pennsylvania Supreme Court's decision in *Myers*, as supporting his claim that his arrest was not supported by probable cause. In *Myers*,

[f]ollowing surveillance of [a] residence at 2507 S. 62nd Street in Philadelphia[,] which anonymous complaints had identified as the site of a drug trafficking operation, police arrested two persons for narcotics violations on March 25 and 26, 1997. On April 1, 1997, at approximately 5:00 p.m., police observed a man entering the premises and leaving approximately two minutes later. About one hour later, a woman entered the house and quickly left. At approximately 6:30 p.m., [the a]ppellant was observed by a surveillance officer[,] who described his actions as follows:

[The appellant] walked up, knocked on the door, [and] entered. Approximately two minutes later, he exited. I believe I saw something in his hand but, again, it was closed. He then placed it in his pocket.

(N.T. Suppression, 7/14/97, at 17-18). [The a]ppellant then entered his vehicle and drove away.

*Myers*, 728 A.2d 961. Based upon the foregoing, our Supreme Court concluded that the police lacked probable cause to place the appellant under arrest: "[The a]ppellant entered a house that was under surveillance and was seen leaving approximately two minutes later. The surveillance officer thought he saw something in [the a]ppellant's hand but could not be certain. **These facts do not constitute probable cause.**" *Id.* at 962 (emphasis added).

In concluding that the facts in the instant case established probable cause, the trial court relied upon our Supreme Court's decision in *Thompson*. In *Thompson*, while on patrol, Philadelphia Police Officer

Orlando Ortiz ("Officer Ortiz") observed a car parked on a sidewalk and observed the appellant standing in the street by the driver's side door. **Thompson**, 985 A.2d at 930. "Officer Ortiz watched Percy Thompson ("Thompson") hand the male driver some money and saw the driver give [Thompson] a small object in return." **Id.** To establish probable cause, the Commonwealth presented evidence that Officer Ortiz was a nine-year member of the police force, who had made several hundred narcotics arrests of this type. **Id.** Further, the Commonwealth presented evidence of Officer Ortiz's knowledge that the neighborhood was a "high crime area in which narcotics, and specifically heroin, regularly were sold[,]" and "[t]he area was designated by the Philadelphia Police Department as an 'Operation Safe Streets' neighborhood." **Id.** Under these circumstances, the **Thompson** Court concluded that "a police officer's experience is a relevant factor in the probable cause inquiry[,] **as long as it has specific application to the circumstances at hand**." **Id.** (emphasis added).

> [A] court cannot simply conclude that probable cause existed based upon nothing more than the number of years an officer has spent on the force. Rather, **the officer must demonstrate a nexus between his experience and the search, arrest, or seizure of evidence**. Indeed, a factor becomes relevant only because it has some connection to the issue at hand….

**Id.** at 935 (citations and quotation marks omitted, emphasis added).

Subsequently, in **Delvalle**, the appellant challenged whether the Commonwealth had presented a sufficient nexus between Police Officer Eric Crawford's ("Officer Crawford") training and experience, and the observed

- 8 -

transactions involving Robert Delvalle ("Delvalle") and Maria Melendez ("Melendez"). The trial court, however, concluded that probable cause existed, without considering Officer Crawford's experience:

> Officer Crawford observed Melendez approach and hand [Delvalle] small objects. [Delvalle] placed those objects in the front of his pants, which certainly is a dubious place to store non-contraband items. [Delvalle] then worked in tandem with Melendez to facilitate suspicious transactions. An individual would approach [Delvalle]. [Delvalle] would then direct that individual to Melendez. That person would then hand Melendez money. Melendez would then give that person an unknown object, which she retrieved from the pocket of her hooded sweatshirt. Unlike the circumstances in **Thompson** …, this sequence of events did not happen once, but instead happened four times in fewer than twenty minutes, each transaction occurring in the same exact manner. **Considering the fact that the neighborhood was considered to be a high drug-transaction area, the suspicious secretion of the objects, the nature and location of the transactions, and the frequency and repetitiveness of the transactions, probable cause existed to warrant a reasonable police officer's belief that [Delvalle] and Melendez were committing a crime, even without considering Officer Crawford's experience.**

> Officer Crawford testified that he had conducted surveillance in that same location thirty to forty times, which produced seventy-five to one hundred drug arrests based upon very similar transactions. As a member of the narcotics enforcement team, Officer Crawford received training in how drugs are packaged, sold generally, and sold through the use of a partner. More importantly, in his experience, Officer Crawford had observed over one hundred people store drugs in the front of their pants, as [Delvalle] did in the instant case. This particular experience informed his view that [Delvalle] and Melendez were working together and selling drugs, even though Officer Crawford was unable to identify the objects being sold. Through this testimony, Officer Crawford established the requisite nexus between his experience and his observations to support the existence of probable cause.

***Delvalle***, 74 A.3d at 1088.

Keeping in mind our scope and standard of review, the evidence in this case falls short of that which was presented in ***Thompson*** and ***Delvalle***. Rather, the circumstances underlying Rivera's arrest more closely resemble those presented in ***Myers***. Here, the alleged transactions took place outside of the presence of Officer Outterbridge. Officer Outterbridge did not witness any activity resembling a transaction, such as the exchange of money for objects or the secreting of those objects in a suspicious location. Under these circumstances, we conclude that the Commonwealth failed to establish the required nexus between Officer Outterbridge's experience and training, and Rivera's arrest. ***See Thompson***, 985 A.2d at 935. Even considering Officer Outterbridge's training and experience, we conclude that the Commonwealth failed to establish probable cause that Rivera had engaged in criminal activity.[4] Accordingly, we reverse the Order of the common pleas court denying Rivera's Petition for Writ of *Certiorari*, reverse Rivera's judgment of sentence, and discharge Rivera.

Order vacated; judgment of sentence vacated and appellant is discharged.

---

[4] We note, however, that such evidence may establish reasonable suspicion to effectuate an investigative stop of Rivera, pursuant to ***Terry v. Ohio***, 392 U.S. 1 (1968).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/4/2016