J-A14042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| QUAMIR K. KENT | : | |
| | : | |
| Appellant | : | No. 2427 EDA 2024 |

Appeal from the Judgment of Sentence Entered August 9, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007314-2023

BEFORE: PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED JULY 30, 2025**

Quamir K. Kent appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, for his convictions of one count each of possession of a firearm without a license, carrying a firearm on public streets or public property in Philadelphia, and possession of a firearm with the manufacturer number obliterated.[1] Kent challenges the denial of his pre-trial motion to suppress physical evidence because the police did not have specific and articulable facts to justify a frisk based on an officer observing Kent entering the passenger side of a U-Haul truck that police knew to be in "try-and-locate" status. We agree, and reverse and remand for a new trial.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 6106(a)(1), 6108, and 6110.2(a), respectively.

The trial court set forth the facts of this case as follows:

[Sergeant Kenneth Taylor of the Philadelphia Police Department] testified that on [October 4, 2023,] at 12:40 a.m.[,] he was on duty in Philadelphia at the 5800 block of Pulaski Street. [. . .] That area is a shopping area that has a Save-A-Lot market, [. . .] and other stores. He [] has had responses to multiple calls in that area for retail theft, shootings, [and] people stealing cars. They have had a rash of people using stolen U-Haul trucks. The truck in question was in the fire lane of a Save-A-Lot. It was a U-Haul that had Arizona tags on it that showed up in NCIC [(National Crime Information Center)] as try[-]and[-]locate. [Sergeant Taylor] testified that that means the owner of the vehicle or someone who used the vehicle had permission to use it[,] but [] did not return it to the rightful owner. [Kent] was with another male inside the Save-A-Lot. [Kent] put bags [] in the vehicle and [] went to the passenger side. [Sergeant Taylor] pulled up to the vehicle with the lights on due to the try[-]and[-]locate [status]. Body worn camera [footage] showed that the sergeant approached the vehicle [and a]sked for identification. The driver said it was [his] girlfriend['s rental]. [Kent] said he had no [identification documentation]. [Sergeant Taylor] then told [Kent and the driver] to put their hands up on the dash[board and t]hat they were [being] detained[. . . .] Officer [Brian] Avery came as backup [. . . and] asked [Kent] to step out. [Officer Avery conducted] a quick frisk with open palms and felt a gun that was immediately apparent in [Kent's] waistband. [Officer Avery] recovered the firearm. He had no doubt when he felt the firearm. [. . . Officer Avery] also noted that [Kent] was pretty calm. [. . . Kent] provide[d] information regarding his identification to Sergeant Taylor.

Trial Court Opinion, 10/21/24, at 1-2 (citing N.T. Suppression Hearing, 3/8/24, at 32-35).

On November 8, 2023, Kent filed an omnibus pretrial motion to suppress physical evidence. He alleged that the arrest was illegal because he was: (1) arrested without probable cause; (2) subjected to a stop and frisk on less than reasonable suspicion; and (3) arrested without a lawfully issued warrant or

other legal justification. *See* Omnibus Pre-trial Motion, 11/8/23, at 1. Further, Kent alleged that police unlawfully searched him without a warrant and without probable cause, in violation of his rights under the United States and Pennsylvania Constitutions. *Id.*

The court held a bifurcated motion to suppress hearing on March 8 and April 12, 2024. At that hearing, the Commonwealth presented live testimony from Sergeant Taylor and Officer Avery, whose testimony was consistent with the above summary of facts. Prior to the presentation of the live testimony, the parties stipulated to the admission of body worn camera video recordings. *See* N.T. Suppression Hearing, 3/8/24, at 19.

After holding the matter under advisement, the court denied Kent's motion to suppress on April 12, 2024. The matter proceeded to a jury waiver trial on May 24, 2024, wherein the court found Kent guilty of all charges. On August 9, 2024, the court sentenced Kent to 11.5 to 23 months of confinement, followed by 4 years of probation. Kent timely appealed, and he and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Kent argues the trial court erred in denying his motion to suppress the firearm seized from his person. *See* Appellant's Brief, at 3. Specifically, Kent contends that there was no legal justification for the frisk because police lacked reasonable suspicion that he was armed and dangerous. *Id.* We agree.

First, Kent claims that, despite his lawful investigatory detention as an occupant of the U-Haul truck, the frisk violated his constitutional rights. Kent relies upon our Supreme Court's decision in **Commonwealth v. Chase**, 960 A.2d 108 (Pa. 2008), to distinguish an investigative detention, which requires reasonable suspicion, from an arrest or custodial detention. **See** Appellant's Brief, at 10, (quoting **Chase**, 960 A.2d at 117). Kent acknowledges that officers may commit "certain minor infringements" upon occupants of a vehicle in the name of officer safety. **See, e.g.**, **Commonwealth v. Pratt**, 930 A.2d 561, 564 (Pa. Super. 2007) (police may require passenger to remain in vehicle); **Commonwealth v. Clinton**, 905 A.2d 1026, 1031-33 (Pa. Super. 2006) (police may ask about presence of weapons); **Commonwealth v. Rodriguez**, 695 A.2d 864, 868-69 (Pa. Super. 1997) (police may require drivers and passengers to alight from vehicle). Kent distinguishes the standard for imposition on passengers from that for drivers and relies on **Maryland v. Wilson**, 519 U.S. 408 (1997), for the proposition that an infringement on a passenger is only allowed for officer safety. **See** Appellant's Brief, at 11.

Kent argues that there was no indication on the record at the suppression hearing that he committed or was committing a crime or that he was armed and dangerous. Kent concedes that the U-Haul truck appearing in the database with "try-and-locate" status was sufficient for it to be stopped

for investigation.[2] *Id.* at 12. However, he claims police lacked probable cause or reasonable suspicion to justify the frisk. Kent identifies our Supreme Court's decision in *In the Interest of S.J.*, 713 A.2d 45 (Pa. 1998), as an example of an instance where an officer had reasonable suspicion to stop an individual, but not justification to search him, since police could not point to specific articulable facts. *See* Appellant's Brief, at 14-15, (citing *S.J.*, 713 A.2d at 48). Kent then points to this Court's decisions in *Commonwealth v. Bozeman*, 205 A.3d 1264 (Pa. Super. 2019), and *Commonwealth v. Myers*, 728 A.2d 960 (Pa. Super. 1999), to distinguish between reasons provided by an officer that are sufficiently specific and articulated to justify a frisk from those reasons that are not. *See* Appellant's Brief, at 15-16.

Kent notes that, at the time of the search: (1) the U-Haul truck driver had been removed from the vehicle; (2) Kent had been entirely cooperative with the police; (3) Kent was sitting calmly with his hands on the dashboard, as instructed; and (4) Officer Avery did not speak to any other officers and knew only that he was responding to a call of a U-Haul truck in try-and-locate status. Kent concludes that there was no justification for the frisk because

_____

[2] At the suppression hearing, Sergeant Taylor defined the try-and-locate status for the court as follows: "Basically, try and locate is either when the owner of the vehicle or someone who used the vehicle had permission to use it but didn't return it to the rightful owner. [. . .] And then after a month it actually turns into a stolen auto." N.T. Suppression Hearing, 3/8/24, at 9.

police did not have a specific, articulable reason for believing that Kent was armed and dangerous. ***Id.*** at 17. We agree.[3]

Our standard of review from the denial of a motion to suppress is well-established:

> [The appellate] standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

***Commonwealth v. Yandamuri***, 159 A.3d 503, 516 (Pa. 2017) (citations and footnote omitted).

Both the United States and Pennsylvania Constitutions protect citizens from unreasonable police searches and seizures:

> The Fourth Amendment to the United States Constitution,[4] made applicable to the states through the Fourteenth Amendment, and

---

[3] In its responsive brief, the Commonwealth concludes that "the present record fails to justify the frisk at issue." Appellee's Brief, at 7.

[4] The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly

*(Footnote Continued Next Page)*

> Article I, Section 8 of the Pennsylvania Constitution[,[5]] protect a person from unlawful searches and seizures. Our Supreme Court has long held that[,] although the Pennsylvania Constitution provides broader protection from unreasonable searches and seizures than the United States Constitution, the **Terry** doctrine, announced in the seminal case of **Terry v. Ohio**, 392 U.S. 1 [] (1968), sets forth the reasonableness standard for Article I, Section 8 of the Pennsylvania Constitution.

**Commonwealth v. Brame**, 239 A.3d 1119, 1127 (Pa. Super. 2020) (some citations omitted; quotation marks, footnote, and brackets omitted); **see also In the Interest of D.M.**, 781 A.2d 1161, 1163 (Pa. 2001) ("Pennsylvania courts have consistently followed **Terry** in stop and frisk cases") (citation omitted).

Our Supreme Court explained the two categories of permissible warrantless seizures that police may effectuate and what protections are attendant to each type of seizure:

> We recognize only two types of lawful, warrantless seizures of the person, both of which require an appropriate showing of antecedent justification: first, an arrest based upon probable

_____

> describing the place to be searched, and the persons or things to be seized.

U.S. CONST. Amend. IV.

[5] The Pennsylvania Constitution states:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

PA. CONST. Art. I, § 8.

cause; second, a 'stop and frisk' based upon reasonable suspicion. Here, we are concerned with this latter type of seizure— interchangeably labeled an "investigative detention," a "***Terry*** stop," or, when coupled with a brief pat-down search for weapons on the suspect's person, a "stop and frisk."

To maintain constitutional validity, an investigative detention must be supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity and may continue only so long as is necessary to confirm or dispel such a suspicion. The asserted grounds for an investigative detention must be evaluated under the totality of the circumstances. So long as the initial detention is lawful, nothing precludes a police officer from acting upon the fortuitous discovery of evidence suggesting a different crime than that initially suspected[.] However, an unjustified seizure immediately violates the Fourth Amendment rights of the suspect, taints the evidence recovered thereby, and subjects that evidence to the exclusionary rule.

***Commonwealth v. Hicks***, 208 A.3d 916, 927-28 (Pa. 2019) (citations and quotation marks omitted).

An investigative detention, i.e., a ***Terry*** stop, occurs when, based on the totality of circumstances, a reasonable person would believe that they were not free to go and were subject to police orders. ***See Commonwealth v. Bennett***, 827 A.2d 469, 478 (Pa. Super. 2003). Generally, a motor vehicle stop is an investigative detention. ***See Commonwealth v. Spence***, 290 A.3d 301, 315 (Pa. Super. 2023). As with other investigative detentions, a vehicle stop must be supported by reasonable suspicion that either a traffic offense, or a crime, is being committed. ***See Chase***, 960 A.2d at 117, 120-21; ***see also Hicks***, 208 A.3d at 940 ("the ***Terry*** doctrine unequivocally requires something suggestive of criminal activity before an investigative detention may occur") (emphasis omitted). A vehicle's try-and-locate status is sufficient

to establish reasonable suspicion to effectuate a traffic stop of that vehicle. *See Commonwealth v Hamilton*, 2022 WL 6646598, at \*12 (Pa. Super., filed Oct. 11, 2022) (unpublished memorandum decision) (233 EDA 2022) ("[W]e agree with the [trial] court that [police] had reasonable suspicion to stop Appellant's vehicle based on the try-and-locate notification.").[6]

During a traffic stop, police are generally authorized to conduct "ordinary inquiries incident to the traffic stop" such as checking driver's licenses, automobile insurance, and proof of insurance. *Rodriguez v. U.S.*, 575 U.S. 348, 355 (2015) (brackets omitted); *see also Commonwealth v. Mack*, 953 A.2d 587, 589 (Pa. Super. 2008) ("Incident to [an investigatory vehicle] stop, an officer may check the vehicle's registration, the driver's license[,] and obtain any information necessary to enforce provisions of the motor vehicle code."). Officers may ask detainees a "moderate number of questions" to determine the driver's identity and any other information to confirm or dispel the officer's suspicions. *Spence*, 290 A.3d at 314 (citation omitted). To that end, and for officer safety, police are permitted to ask occupants whether they have a weapon or anything concerning as a matter of course during the traffic stop. *See Clinton*, 905 A.2d at 1031-33. However, "measures aimed at finding evidence of other crimes or safety precautions taken to facilitate detours from the [traffic stop's] mission do not pass

---

[6] *See* Pa.R.A.P. 126(b) (authorizing citation for persuasive value to non-precedential decisions filed after May 1, 2019).

constitutional muster." ***Commonwealth v. Ross***, 297 A.3d 787, 793 (Pa. Super. 2023).

When a vehicle is stopped, the principles of ***Terry*** apply to all passengers, as well as the driver. ***See Commonwealth v. Simmons***, 17 A.3d 399, 403 (Pa. Super. 2011). Police may order the driver and passengers to exit the vehicle until the stop is completed. ***See Commonwealth v. Wright***, 224 A.3d 1104, 1109 (Pa. Super. 2014); ***see also Pratt***, 930 A.2d at 567-68 ("allowing police officers to control all movement in a traffic encounter [. . .] is a reasonable and justifiable step towards protecting their safety") (footnote omitted); ***see also Knowles v. Iowa***, 525 U.S. 113, 117 (1998) ("while the concern for officer safety in this context may justify the 'minimal' additional intrusion of ordering a driver and passengers out of the car, it does not by itself justify the often considerably greater intrusion attending a full field-type search"). Under certain circumstances, police officers, for their safety, may handcuff individuals during an investigative detention without converting the interaction into an arrest. ***See Wright***, 224 A.3d at 1109. This interest in officer safety stems from the fact that "[t]raffic stops are especially fraught with danger to police officers, so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." ***Rodriguez***, 575 U.S. at 355 (citation and quotation marks omitted); ***see also Clinton***, 905 A.2d at 1030 (concern for officer safety "outweighs the minor intrusion on the drivers and passengers whose freedom of movement has already been curtailed by the traffic stop") (citation and emphasis omitted).

In **In the Interest of T.W.**, 261 A.3d 409 (Pa. 2021), our Supreme Court reiterated that "[t]he purpose of a **Terry** frisk is to dispel any fear that the stopped suspect is armed and dangerous." **Id.** at 421. A frisk "does not require the officer to be absolutely certain that the individual is armed." **Id.** (citation and quotation marks omitted); **see also Minnesota v. Dickerson**, 508 U.S. 366, 372-73 (1993) (police must have reasonable suspicion of criminal activity prior to search). To support a **Terry** frisk, a police officer must be able to "articulate specific facts from which he reasonably inferred that the individual was armed and dangerous." **Commonwealth v. Cunningham**, 287 A.3d 1, 10 (Pa. Super. 2022) (citation omitted); **see also Commonwealth v. Grahame**, 7 A.3d 810, 816 (Pa. 2010) ("a protective search cannot be justified under **Terry** unless the officer can articulate facts that establish an individualized, objective basis for perceiving a threat of armed violence"). The suppression court, in determining whether a frisk was constitutionally valid and supported by reasonable suspicion, examines "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or the safety of others was in danger." **Commonwealth v. Taylor**, 771 A.2d 1261, 1269 (Pa. 2001) (citation and quotation marks omitted). The court makes this safety determination based on the totality of the circumstances viewed through the eyes of a trained police officer. **See Commonwealth v. Williams**, 980 A.2d 667, 671 (Pa. Super. 2009). The fruit of the poisonous tree doctrine provides that if evidence has

been seized unlawfully, it must be excluded. *See Commonwealth v. Santiago*, 209 A.3d 912, 928 (Pa. 2019).

Instantly, the trial court addressed Kent's claim as follows:

Sergeant Taylor had reasonable suspicion to initiate a *Terry* stop, as the vehicle's try-and-locate status, particularly when combined with its presence in an area known for stolen U-Haul vehicles, gave him reason to believe that criminal activity was afoot and that the people using the vehicle were involved. Officer Avery arrived on the scene as backup. He asked Appellant to step out of the vehicle, conducted a brief frisk of Appellant's waistband, and recovered the firearm. Officer Avery testified that he conducted the frisk for officer safety because of the vehicle's try-and-locate status.

Trial Court Opinion, 10/21/24, at 4-5 (citations omitted).

Upon review, we conclude that the trial court erred in denying Kent's motion to suppress because the frisk of Kent's person was not justified. Here, Officer Avery knew that he was responding to a U-Haul truck parked in a fire lane with a try-and-locate status, but he did not communicate anything else with his fellow officers. At the suppression hearing, when testifying as to why he frisked Kent, Officer Avery stated that it was "for officer safety." N.T. Suppression Hearing, 3/8/24, at 21. Officer Avery, however, did not explain what facts supported his belief that Kent might pose a threat to officer safety.[7]

_____

[7] We do not suggest that the passenger of a car in stolen (or something akin to stolen) status parked illegally in front of the door to a store could never be frisked, just that a justifiable basis was not articulated in this record. No questions were asked of Officer Avery to establish whether he had specific and articulable facts to justify his concern. Officer Avery's body camera video was not entered into the record. Instead, the video of an officer standing behind Officer Avery was entered into evidence. Because of the camera angle, Officer

*(Footnote Continued Next Page)*

- 12 -

*Id.* He testified that before the frisk, Kent was cooperating with police instructions and sitting in the passenger seat with his hands on the dashboard. *Id.* at 16. There was no testimony that Kent made any furtive movements or refused to cooperate with the police that would have given rise to the officer's suspicions that Kent was armed and dangerous. *See, e.g.*, *Bozeman*, 205 A.3d at 1275-76. We agree with Kent that this case is comparable to *Myers*, where the officer's only stated justification for a frisk was "for my own protection." *Myers*, 728 A.2d at 963. Without any specific, articulable facts, there is no basis for a reasonably prudent man in the circumstances to consider his safety or the safety of others to be in danger. *See Taylor*, 771 A.2d at 1269; *see also S.J.*, 713 A.2d at 48 ("The absence of any specific, articulable facts establishing that Appellant was armed and dangerous renders the frisk unlawful.") (footnote omitted).

Since the search of Kent's person was illegal, we find that all evidence derived from the illegal search is fruit of the poisonous tree that must be excluded. *See Santiago*, 209 A.3d at 928. Accordingly, we must reverse Kent's judgment of sentence and remand for a new trial.

Judgment of sentence vacated. Case remanded for further proceedings. Jurisdiction relinquished.

_____

Avery's body blocks any view of Kent or the frisk at the critical moments. Therefore, we could not draw any inferences from the evidence.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>7/30/2025</u>