J-S70006-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBERT LEE EDWARDS | |
| Appellant | No. 3467 EDA 2015 |

Appeal from the Judgment of Sentence April 27, 2015
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0006848-2014

BEFORE:  OLSON, OTT and MUSMANNO, JJ.

MEMORANDUM BY OLSON, J.:　　　　　　　　**FILED NOVEMBER 15, 2016**

Appellant, Robert Lee Edwards, appeals from the judgment of sentence entered on April 27, 2015, following his bench trial convictions for possession of a controlled substance, possession with intent to deliver a controlled substance (PWID), and criminal use of a communication facility.[1] Upon review, we affirm.

We briefly summarize the facts and procedural history of this case as follows.  On June 22, 2014, at approximately 1:00 a.m. in Quakertown, Pennsylvania, police witnessed a white Cadillac parked in an unlit area of a Pizza Hut parking lot after business hours.  After waiting five minutes, Corporal Joshua Mallery, who was in uniform and driving a marked police

---

[1]  35 P.S. § 780-113(a)(16), 35 P.S. § 780-113(a)(30), and 18 Pa.C.S.A. § 7512(a), respectively.

car, parked to the side and behind the Cadillac. Based upon the time and unlit location, he approached the driver's side door with a flashlight. Appellant, the only occupant of the vehicle, was sitting in the driver's seat. Corporal Mallery saw three cellular telephones in Appellant's lap, one of which was ringing incessantly. Corporal Mallory also saw loose cash, including a $100.00 bill, in the partially opened, center console area of the vehicle. Upon questioning, Appellant told Corporal Mallory he was waiting for a friend by the name of Mike, but he did not know Mike's last name and could not say why he was waiting for Mike. Corporal Mallory noticed that Appellant was shaking, breathing hard, and appeared nervous.

A backup officer arrived on the scene soon thereafter and parked 15 to 20 feet from Appellant's car, but did not impede Appellant's vehicle. When the backup officer approached Appellant, he noticed an outgoing text message on one of the cellular telephones in Appellant's possession that read, "Mike set me up." Following a criminal record check of Appellant, police discovered a previous drug arrest, but Appellant denied it. Corporal Mallery summoned a canine (K9) unit to the scene and removed Appellant from the vehicle. The K9 dog indicated controlled substances were located in the driver's seat area of the vehicle. Police impounded the vehicle and obtained a search warrant for it. The search uncovered five cellular telephones, $407.00 in cash, 1.10 grams of cocaine base, two empty vials, and written chemical formulas for making crack cocaine. Corporal Mallery

then obtained search warrants to obtain the records for all five recovered cellular phones.

On July 9, 2014, the Commonwealth charged Appellant with the aforementioned criminal offenses, as well as possession of drug paraphernalia.[2] On December 29, 2014, Appellant filed a *pro se* motion to suppress evidence. Counsel for Appellant filed another motion to suppress evidence on February 4, 2015. The trial court denied relief following a suppression hearing on March 4, 2015. On April 27, 2015, the trial court held a bench trial, incorporating the testimony from the suppression hearing into the record. At the conclusion of trial, the trial court found Appellant guilty of possession of a controlled substance, PWID, and criminal use of a communication facility. The trial court sentenced Appellant to one to three years of incarceration for PWID, with a consecutive two-year sentence of probation for criminal use of a communication facility. Because possession of a controlled substance merges with the offense of PWID, the trial court imposed no further penalty on that charge. This timely appeal resulted.[3]

---

[2] 35 P.S. § 790-113(a)(32).

[3] On May 4, 2015, Appellant filed post-sentence motions. The trial court held a hearing and denied relief on July 13, 2015. On October 5, 2015, Appellant filed a counseled petition pursuant to the Post Conviction Relief Act (PCRA), requesting the *nunc pro tunc* reinstatement of Appellant's direct appeal rights. By order entered on October 13, 2015, the trial court granted the request. On November 12, 2015, Appellant filed a notice of appeal. On November 14, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). *(Footnote Continued Next Page)*

On appeal, Appellant presents the following issues for our review:

1. Did the lower court err when it denied [Appellant's] motion to suppress[] physical evidence seized following an investigative detention that was unsupported by reasonable suspicion that [Appellant] was engaged in criminal activity?

2. Did the lower court err in finding there was sufficient evidence to prove all the requisite elements of possession with intent to deliver a controlled substance, simple possession of a controlled substance and criminal use of a communication facility when the evidence relied upon [included] text messages of unknown authorship, sent weeks before the incident in question, that were extracted from a phone found in a vehicle that [Appellant] operated but did not own?

Appellant's Brief at 5.

In his first issue presented, Appellant contends the police lacked reasonable suspicion to conduct an investigatory detention and, therefore, the police illegally seized the items recovered from the vehicle he was driving. *Id.* at 17. More specifically, Appellant "asserts that he was subjected to an investigative detention and the trial court's determination that the initial interaction was a mere encounter is not supported by the record." *Id.* at 20. Appellant maintains that a reasonable person in his circumstances would not have felt free to leave because: (1) he would have had to "exert[] considerable effort to back the Cadillac between the two

_(Footnote Continued)_ ⸻⸻⸻⸻⸻⸻

After requesting and receiving additional time to file his Rule 1925(b) statement, Appellant complied on January 11, 2016. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on February 11, 2016.

- 4 -

police vehicles that were purposely positioned in a manner to hinder[] his departure[;] (2) both officers were in full uniform, Corporal Mallery shown a flashlight into the car, and at least one officer was positioned next to the driver's side door at all times; (3) Corporal Mallery did not return his license and registration even after he confirmed Appellant had no active warrants; and (4) despite being parked in an area of known thefts and burglaries, Corporal Mallery did not observe Appellant engage in criminal activity. *Id.* at 21-24.

When reviewing the denial of a defendant's suppression motion, we apply the following standard of review:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.

*Commonwealth v. Witmayer*, 144 A.3d 939, 948 (Pa. Super. 2016) (internal citation omitted). "Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." *Commonwealth v. Stilo*, 138 A.3d 33, 35–36 (Pa. Super. 2016) (internal citation omitted).

It is well-established that there are three categories of interaction between citizens and police officers:

The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention[,]" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

\*       \*       \*

A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. This standard, less stringent than probable cause, is commonly known as reasonable suspicion. In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Id.* at 36 (internal citations omitted).

Here, the trial court determined that the initial interaction was a mere encounter based upon Corporal Mallery's observation that Appellant parked in a dark, unlit parking lot after store hours, in a high crime area, and did not appear to be lost. *See* Trial Court Opinion, 2/11/2016, at 8. We agree. When Corporal Mallery initially approached Appellant to request information, the interaction did not require any level of suspicion. Corporal Mallery positioned his marked police car near the right rear portion of Appellant's vehicle, but left room for the Cadillac to back out. N.T., 2/20/2015, at 22.

Police did not put Appellant in a position where he was not free to leave. Upon approach, Corporal Mallery observed, from a lawful vantage point, three cell phones in Appellant's lap and a "wad" of currency "in the center console." *Id.* at 22-24. Corporal Mallery made contact with Appellant and asked what he was doing. *Id.* at 28. Appellant said he was waiting for a friend, but could not offer the friend's last name. *Id.* "One phone [] kept ringing and ringing like somebody was trying to get ahold of [Appellant] multiple times while [Corporal Mallery] was standing there interacting with him." *Id.* When asked about the currency, Appellant tried to change the subject, was extremely nervous, and started breathing heavily. *Id.* at 29. Corporal Mallery testified that based upon his training and experience, in totality, the cellular phones, large and unorganized sums of cash, location of the vehicle, and Appellant's nervous and evasive behavior "indicated possible drug activity[.]" *Id.* at 27-30. Thus, what began as a mere encounter ripened into a reasonable suspicion that criminal activity was afoot, which justified an investigative detention. Moreover, Corporal Mallery formed the requisite reasonable suspicion before asking for vehicle registration and before backup arrived. Hence, we reject Appellant's reliance on police actions occurring afterwards, *i.e.*, the positioning of the additional officer's vehicle and failing to return Appellant's license and registration after confirming there were no active warrants. Accordingly, the trial court properly denied suppression and Appellant's first issue lacks merit.

Next, Appellant contends there was insufficient evidence to support his convictions. Appellant's Brief at 24. Appellant maintains that, "the primary evidence relied upon were text messages of unknown authorship extracted from a cell phone within a vehicle that [Appellant] drove on the night in question but did not own." *Id.* at 24-25. In sum, Appellant argues:

> The trial court improperly relied upon the text message evidence. The Commonwealth's drug expert repeatedly stated that his opinion that the controlled substance was possessed with the intent to deliver was based almost entirely on the text messages themselves. This is not a case where the Commonwealth presented an overwhelming amount of credible evidence regarding [Appellant's] involvement in drug transactions. The Commonwealth's case was built on evidence located throughout a vehicle that [Appellant] operated, but did not own, and Detective [David] Hank[s'] expert testimony, "based almost entirely" on unauthenticated text message[s], many of which were sent days and weeks before the incident in question.
>
> The text messages were vital to proving each of the charges. If the authorship of the drug related text message[s] had been definitively linked to [Appellant], those messages made it more probable that [Appellant] constructively possessed the crack cocaine with the intent to deliver and that he used the cell phone to facilitate a drug transaction.
>
> Since authorship was not established, the Commonwealth failed to prove each of the elements of the crimes beyond a reasonable doubt.

*Id.* at 29-30.

Our standard of review is well-established:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there

is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014) (internal citations and quotations omitted).

Initially, we note that Appellant argues the text messages were not properly authenticated before being admitted into evidence. However, Appellant failed to contemporaneously object at the time the text messages were entered into evidence and has waived any challenge to their admission. *See Commonwealth v. Payne*, 760 A.2d 400, 405 (Pa. Super. 2000) (failure to object to the admission of subpoenas signed by defendant which were not properly authenticated waived any claim that trial court erred in

- 9 -

admitting such evidence); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Additionally, Appellant fails to cite any law pertaining to authentication in his appellate brief and this lack of legal development likewise results in waiver. *See Commonwealth v. Plante*, 914 A.2d 916, 924 (Pa. Super. 2006) ("We have repeatedly held that failure to develop an argument with citation to, and analysis of, relevant authority waives the issue on review."); *see also* Pa.R.A.P. 2119(a). Thus, we may not reach the question of whether the text messages at issue were properly authenticated prior to their admission. Moreover, although Appellant purports to contest the sufficiency of the evidence presented, he in fact contends that the trial court placed too much reliance on the text messages. Such a challenge goes to the weight of the evidence presented. "To properly be preserved, a weight of the evidence claim must be raised in a motion prior to sentencing, in an oral motion at sentencing, or a post-sentence motion." *Antidormi*, 84 A.3d at 758. Appellant has not raised or preserved a weight of the evidence claim and we may not weigh the evidence and substitute our judgment for the fact-finder.

Furthermore, "[i]n evaluating the sufficiency of the evidence, we do not review a diminished record." *Commonwealth v. Gray*, 867 A.2d 560, 567 (Pa. Super. 2005) (citation omitted). "Rather, the law is clear that we are required to consider all evidence that was actually received, without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings are correct." *Id.*

- 10 -

We have reviewed the certified record, the parties' briefs, the relevant law, and the trial court's opinion entered on February 11, 2016. We conclude that the opinion meticulously, thoroughly, and accurately disposes of Appellant's sufficiency of the evidence claim on appeal. Therefore, we affirm that issue on the basis of the trial court's opinion and adopt it as our own. Because we have adopted the trial court's opinion, we direct the parties to include the trial court's opinion in all future filings relating to our examination of the merits of this appeal, as expressed herein.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2016

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :
:                      No. CP-09-CR-0006848-2014
v. :
:
ROBERT EDWARDS :

## OPINION

On April 27, 2015, following a bench trial, Appellant Robert Edwards (hereinafter sometimes referred to as "Appellant") was found guilty of charges of possession with intent to deliver a controlled substance, possession of a controlled substance, and criminal use of a communication facility. On the same day, this Court sentenced Appellant. Appellant received a sentence of incarceration in a state correctional facility for a period of not less than one year nor more than three years with respect to the possession with intent to deliver charge.[1] A sentence of a two-year consecutive probationary period was imposed on the criminal use of a communication facility charge.

Appellant has filed an appeal to the Superior Court of Pennsylvania from the judgments of sentence. This Opinion is filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

## BACKGROUND

On November 18, 2014, Appellant was charged by way of criminal complaint with: (1) possession of a controlled substance with intent to deliver,[2] (2) intentional possession of a

---

[1] No further sentence was imposed upon Appellant with respect to the possession of a controlled substance charge, as it is a lesser included offense of the possession with intent to deliver charge. *See* N.T. 4/27/15, p. 57.
[2] 35 Pa. Stat. Ann. § 780-113(a)(30).



controlled substance,[3] (3) criminal use of a communications facility,[4] and (4) possession of drug paraphernalia.[5] On February 20, 2015, Appellant came before the Court for a suppression hearing in regard to these drug related charges. At the suppression hearing, Appellant, through counsel, alleged illegal stop, seizure, and search of the car he was operating prior to his arrest. Appellant also raised, *pro se*, an issue regarding irregularity of the search warrant issued in relation to the search of the car.[6] N.T. 2/20/15, pp. 11-12. This suppression hearing was continued for further testimony on March 4, 2015. *See* N.T. 2/20/15, p. 91; N.T. 3/4/15. Following the hearing, we denied and dismissed both of Appellant's suppression motions.[7] N.T. 3/4/15, p. 52. Our ruling was based on the following findings that we made at the hearing:

> On June 22nd of 2014, during the early morning hours, Corporal Joshua Mallery of the Quakertown Borough Police Department was on patrol in uniform in a marked vehicle. He at that time had approximately 14 years of experience in law enforcement and was experienced in the area of interdiction of controlled substances and narcotics trafficking and had made many arrests for possession with intent to deliver controlled substances.
>
> At approximately 12:52 a.m. on June 22nd, Officer Mallery was in a marked vehicle in the area of South West End Boulevard in Quakertown and at that time observed a white Cadillac pull into a parking lot across the street from where the corporal was located near the Faulkner Bargain Corral, and that particular vehicle pulled into the parking lot, pulled around the back of the building in an unlighted area which was marked for . . . Pizza Hut parking only, and that vehicle turned off its lights. It was parked perpendicularly to the back of the building. No business establishments were open[] at that particular time when the vehicle parked there.
>
> Corporal Mallery observed the vehicle for a period of approximately five minutes. There was no activity with respect to the vehicle in that unlighted area, and eventually he called for backup before approaching that vehicle.
>
> That vehicle was parked in an area which was known to the corporal as a high crime area where there had been numerous thefts with respect to vehicles and thefts from vehicles in that particular area.

---

[3] 35 Pa. Stat. Ann. § 780-113(a)(16).
[4] 18 Pa. Stat. and Cons. Stat. Ann. § 7512(a).
[5] 35 Pa. Stat. Ann. § 780-113(a)(32).
[6] Appellant was represented by a public defender in regard to his suppression claims raising the issue of illegal stop, seizure, and search. However, Appellant's public defender did not wish to pursue Appellant's claim regarding alleged issues with the search warrant for the car, so Appellant pursued this contention *pro se*. *See* N.T. 2/20/15, pp. 3-12.
[7] Both the suppression issues respectively raised by Appellant's public defender and by Appellant *pro se* were found to lack merit. *See* N.T. 3/4/15, p. 52.

2

After approximately five minutes, noticing no activity with respect to the Cadillac, the officer approached the vehicle in his police vehicle, and he parked behind and to the side of the vehicle, the Cadillac, but did not block the vehicle in.

The corporal alighted from his vehicle at that time with flashlight in hand, since this was an unlighted area, and he approached the driver's side door of the Cadillac.

[He observed the defendant] in the driver's seat. He was the only occupant of the vehicle. And the officer immediately noticed that the defendant had three cell phones in his lap, [with] one of the cell phones continually ringing. The defendant was making either calls or texts on one of those cell phones. The corporal also saw cash, loose cash, in the center console area of that vehicle, which included a $100 bill and a $20 bill which were visible.

[The corporal] at that time, noting the location of the vehicle, the cell phones, [and] the cash, became suspicious of drug activity with respect to that vehicle and the defendant.

He began speaking to the defendant, who was seated in the car. The defendant said he was waiting for a friend by the name of Mike, but did not initially give Mike's last name or state the purpose of why he was waiting for Mike at that location. The officer noticed that the defendant was shaking, even though it was 60 degrees or so outside, and seemed to be breathing hard and was nervous.

Soon after Corporal Mallery had approached the vehicle, the backup officer, Officer Stoneback, drove up to the scene. He parked approximately 15 to 20 feet from the defendant's vehicle but was not . . . blocking that vehicle in.

The defendant did provide Corporal Mallery with certain paperwork that was requested, and Corporal Mallery left the car to check that paperwork; and Officer Stoneback came upon the vehicle and looked inside, and he noticed on one of the cell phones a message, "Mike set me up," with respect to, again, one of the cell phones in the defendant's possession.

Eventually, Officer Stoneback went back to his vehicle, did a record check of the defendant, and did find that the defendant had been arrested for a drug offense; although, the defendant denied this at the scene.

At approximately this time, after Corporal Mallery had been involved in his encounter with the defendant, at approximately 1:13 a.m. Corporal Mallery . . . called for a K9 assist with respect to this case. And at 1:32 a.m. Officer Golden from Whitehall Township in Lehigh County, a K9 officer, arrived on scene; and by this time the defendant was outside of the car, [and] was sitting on a curb near his car.

Officer Golden's K9, who was trained to detect controlled substances, walked around the car, and then on his own entered the car and did indicate controlled substances in the area of the front driver's seat of the vehicle.

After the [K9] detected a controlled substance, Corporal Mallery decided to impound the Cadillac vehicle. And that vehicle was impounded, and eventually a search warrant was obtained for that vehicle on June 25th. That search warrant was approved by Jonathan Long of the District Attorney's Office and was eventually . . . presented to Magistrate Judge Roth in Quakertown, who approved the search warrant for the vehicle.

The Cadillac was thereafter searched, and a controlled substance, as well as currency, as well as a chart relating to controlled substance were found, among other things,

3

during that search.[8] Also, during that search, five cell phones were actually found in the vehicle. And the next day Corporal Mallery applied for a search warrant for those five cell phones, also, with Magistrate Judge Roth, and a search warrant was approved for the cell phones at that time.

The defendant was not arrested . . . the early morning of the 22nd when he was approached by the officer and the car was impounded.

With respect to the issues concerning the search, the Court finds that when Corporal Mallery first approached the Cadillac vehicle which the defendant was driving[,] he had reasonable suspicion, based upon the circumstances of where the car was parked, the time of day in that high crime area with no businesses open, and he had reasonable suspicion at that time, certainly, to engage the defendant and encounter the defendant when he approached the car, again, which he was not blocking in.

After looking into the vehicle and seeing the cell phones and the cash and noting the defendant's nervousness and evasiveness, at that time Corporal Mallery developed reasonable suspicion that criminal activity was afoot with respect to controlled substances.

Later, that suspicion was built upon with respect to the text that showed up on the defendant's phone, as well as the fact that the K9 detected controlled substances in the vehicle; and, certainly, probable cause at that time was developed to impound the car. Certainly, the search warrant affidavits with respect to CS-3, the search warrant for the vehicle, as well as CS-6, the search warrant for the telephones, contain sufficient probable cause to justify the search of both the vehicle and the cell phones.

With respect to the additional issue raised by Mr. Edwards, the Court finds that in that Mr. Edwards was eventually provided with signed copies of the search warrants, after having originally been afforded with just unsigned copies, that that situation has been remedied, and those warrants are made a part of this record . . . as CS-3 and CS-6.

N.T. 3/4/15, pp. 45-52.

Following the suppression hearings, Appellant proceeded to trial on April 27, 2015.

Appellant waived his right to a jury trial and decided to proceed with a stipulated waiver trial.

N.T. 4/27/15, pp. 4-10. The testimony from the suppression hearings was incorporated into the

trial record, and the trial proceeded, with the only additional testimony being that of Detective

David Hanks. N.T. 4/27/15, p. 20, pp. 23-42. It was stipulated at trial that the Bucks County

Crime Lab tested the substance found in the vehicle Appellant was occupying and determined it

to be 1.10 grams of cocaine base. N.T. 4/27/15, p. 17.

---

[8] The search of the vehicle revealed the following as being inside: a total of five cellphones, $407 dollars in U.S. currency, a whitish yellow chunk of substance which was later revealed to be 1.10 grams of cocaine base, a piece of cardboard that seemed to contain scientific chemical reactions for the process of making crack cocaine, and two vials which are allegedly commonly used for packaging crack cocaine. N.T. 2/20/15, pp. 82-83; N.T. 4/27/15, p. 17.

4

At trial, Detective David Hanks was accepted as an expert in the field of narcotics investigation. N.T. 4/27/15, p. 24. He testified that he "believ[ed] the cocaine in this case was possessed with the intent to distribute." N.T. 4/27/15, p. 27. When asked about the basis for his opinion, Detective Hanks stated:

> Well, initially the presence of the cocaine itself; the lack of any paraphernalia for the ingestion of crack cocaine, such as a pipe, stems, lighters, a Chore Boy, which is a copper mesh; the presence of readily available U.S. currency. Drug sales are a cash only business generally. The transactions are usually very quick. And mainly, in this case, my opinion is based on a series of text messages from the Samsung phone that was recovered at the scene.

N.T. 4/27/15, pp. 27-28. Detective Hanks also testified as to how a phone extraction report, compiled based on the cell phones recovered from the car Appellant was using, helped to form his opinion in this case. *See* N.T. 4/27/15, pp. 28-35. After reviewing and analyzing several of the messages sent and received from the various phones[9] found with Appellant, with particular focus on one of the phones, Detective Hanks stated that "based on these conversations, I believe that this phone was being used to conduct drug sales." N.T. 4/27/15, p. 35. Detective Hanks also testified that the loose currency found inside of the car Appellant was operating was indicative of drug dealing, stating that the loose cash "in association with the telephones, the location of the stop, the circumstances of the stop, and the text messages all take part of [his] opinion" that the controlled substance, crack cocaine, was possessed with the intent to distribute. N.T. 4/27/15, pp. 35-36.

After hearing the expert testimony of Detective Hanks and the arguments of counsel, we issued our verdict and found Appellant guilty of possession with intent to deliver a controlled substance, possession of a controlled substance, and criminal use of a communication facility.

---

[9] Out of the five phones uncovered during the search of the vehicle used by Appellant, there were two in particular that were found to contain drug related text messages - a Samsung GSM SGHT139 with phone number 484-862-0624 and a black Samsung/Verizon SM-B311V with phone number 573-405-0210. *See* N.T. 4/27/15, pp. 17-19.

N.T. 4/27/15, p. 48. Appellant was found not guilty of possession of drug paraphernalia. N.T. 4/27/15, p. 48. Appellant proceeded immediately to sentencing. N.T. 4/27/15, p. 49. With respect to the possession with intent to deliver conviction, Appellant was sentenced to incarceration in a state correctional facility for not less than one year nor more than three years.[10] N.T. 4/27/15, p. 57. Appellant was further sentenced to a two-year consecutive term of probation for the criminal use of a communication facility conviction.[11] N.T. 4/27/15, p. 57.

On May 4, 2015, Appellant filed a Motion to Reconsider the Suppression Ruling. On July 13, 2015, following a hearing, this Motion was denied and dismissed. On October 2, 2015, Appellant filed a Petition for Post-Conviction Collateral Relief asking the Court to reinstate his right to file a direct appeal *nunc pro tunc*. On October 13, 2015, this Court granted Appellant's Petition for Post-Conviction Collateral Relief and permitted his appeal.

On November 12, 2015, Appellant filed a Notice of Appeal with the Superior Court. On November 13, 2015, we issued an Order pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) ordering Appellant to file a concise statement of errors complained of on appeal within twenty-one days. On December 4, 2015, Appellant filed a Petition to Extend Time to File Concise Statement of Matters Complained of on Appeal, which was granted on December 10, 2015. On January 11, 2016, Appellant provided the Court with his Concise Statement of Matters Complained of on Appeal.

---

[10] Appellant received credit for time served in custody since July 9, 2014, and was found to be Recidivism Risk Reduction Incentive eligible. N.T. 4/27/15, pp. 57-59.
[11] No sentence was imposed in regard to the lesser included offense of possession of a controlled substance. N.T. 4/27/15, p. 57.

6

Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), a Concise Statement of Matters Complained of on Appeal was filed by Appellant setting forth the following allegations, *verbatim*.

1. The lower court erred when it denied Defendant's motion to suppress evidence seized following an unlawful investigatory stop when the police lacked reasonable suspicion of criminal activity being afoot.
2. The lower court erred in finding there was sufficient evidence to prove all the requisite elements of possession with intent to deliver a controlled substance, simple possession of controlled substance and criminal use of a communication facility when the primary evidence that formed the basis for the drug expert's opinion were text messages of unknown authorship.

## DISCUSSION

We will address each of Appellant's contentions in the order set out above.

## I)    Suppression

Appellant argues that we erred in finding that there was sufficient reasonable suspicion for an investigatory stop, and therefore that it was error to deny Appellant's motion to suppress.

The "standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Com. v. Jones*, 605 Pa. 188, 197-98, 988 A.2d 649, 654 (2010). "Where the suppression court's factual findings are supported by the record, [an appellate court is] bound by these findings and may reverse only if the court's legal conclusions are erroneous." *Id.* "Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts." *Id.* (internal quotation marks omitted).

"The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in

7

light of the totality of the circumstances." *Com. v. Davis*, 2014 PA Super 234, 102 A.3d 996, 1000 (2014) *appeal denied*, 113 A.3d 278 (Pa. 2015) (internal quotation marks omitted). "In assessing the totality of the circumstances, a court must give weight to the inferences that a police officer may draw through training and experience." *Id.* "[T]he totality of the circumstances test does not limit [the] inquiry to an examination of only those facts that clearly indicate criminal conduct . . . [because] even a combination of innocent facts, when taken together, may warrant further investigation by the police officer." *Id.* "Among the factors to be considered in establishing a basis for reasonable suspicion are tips, the reliability of the informants, time, location, and suspicious activity, including flight." *Com. v. Gray*, 784 A.2d 137, 142 (Pa. Super. Ct. 2001).

In the present case, Corporal Mallery first attempted to interact with Appellant due to the following: (1) Corporal Mallery observed Appellant pull into a dark area of a shopping center parking lot late at night, when all of the stores were closed, and turn off all of the vehicle's lights; (2) the shopping center in which Corporal Mallery observed Appellant was a known high crime area; and (3) while watching Appellant's car from a distance for about five minutes, Corporal Mallery did not observe any behavior that was consistent with a person who was just lost or turned around. *See* N.T. 2/20/15, pp.17-24. Corporal Mallery and assisting Quakertown Borough Police officers never blocked in the vehicle occupied by Appellant, and Appellant was never told he was not free to leave during his initial contact with police. *See* N.T. 2/20/15, pp. 31, 43; N.T. 3/4/15, p. 12. Therefore, Officer Mallery's initial interactions with Appellant were a mere encounter, not requiring reasonable suspicion at all. *See Com. v. Chase*, 599 Pa. 80, 96, 960 A.2d 108, 117 (2008) ("A mere encounter need not be supported by any level of suspicion, and does not require a person to stop or respond.").

8

Although the initial interactions were consistent with a mere encounter and Officer Mallery needed no justification relating to criminal activity to engage with Appellant, Officer Mallery did have sufficient reasonable suspicion based on the aforedescribed observations to justify an investigatory stop at the time he arrived at the vehicle occupied by Appellant. Once Corporal Mallery approached the car occupied by Appellant, he developed additional reasonable suspicion that criminal activity was afoot with respect to narcotics when he saw the multiple cellular phones and loose cash in plain view within the car, and noticed Appellant's initial nervousness and evasive attitude. *See* N.T. 2/20/15, pp. 23-29, 35. Corporal Mallery's initial reasonable suspicion was compounded and confirmed when an assisting officer arrived and saw Appellant type a text message that read "Mike set me up." *See* N.T. 2/20/15, p. 33. Further, the assisting officer also ran Appellant's criminal history, which reflected multiple arrests and a prior history involving possession with intent to deliver. *See* N.T. 2/20/15, p. 33. Based upon the totality of these circumstances, Corporal Mallery had sufficient reasonable suspicion to conduct an investigatory stop of Appellant, and to direct Appellant to alight from the car. Corporal Mallery, an officer with extensive knowledge, experience, and training, reasonably concluded that criminal activity was afoot with respect to Appellant's conduct at the closed Faulkner Bargain Corral shopping center.

When the K9 arrived on the scene and alerted that it sensed a controlled substance in the vehicle, this provided even further justification for subsequently impounding the car occupied by Appellant pending the approval of a search warrant.[12] *See* N.T. 2/20/15, pp. 33-34.

---

[12] We note that at the point when the K9 alerted the police officers on the scene to narcotics being present in the vehicle occupied by Appellant that this not only confirmed Officer Mallery's initial reasonable suspicion, but that this could have provided probable cause for an arrest. *See Com. v. Williams*, 2010 PA Super 141, 2 A.3d 611, 616 (2010) ("Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime.").

9

Accordingly, we believe that Appellant's contention regarding the denial of his motion to suppress is without merit.

## II)   Sufficiency of the Evidence

Appellant argues that we erred in finding that there was sufficient evidence to prove all of the requisite elements of: (i) possession with intent to deliver a controlled substance, (ii) simple possession of a controlled substance, and (iii) criminal use of a communication facility. Appellant alleges that this is especially the case because the primary evidence that formed that basis for Detective Hanks' opinion were text messages that were allegedly of unknown authorship.

"In reviewing a sufficiency of the evidence claim, [it] must [be] determine[ed] whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense." *Com. v. Koch*, 2011 PA Super 201, 39 A.3d 996, 1001 (2011). "The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt." *Id.* "Any question of doubt is for the trier of fact, unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances." *Com. v. Kirkland*, 2003 PA Super 279, ¶ 6, 831 A.2d 607, 610 (2003).

We will individually address the sufficiency of the evidence for each charge for which Appellant was convicted.

### i)   *Possession with Intent to Deliver a Controlled Substance*

The crime of possession with intent to deliver a controlled substance is set forth under 35 Pa. Stat. Ann. § 780-113(a)(30), which states:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

10

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 Pa. Stat. Ann. § 780-113(a)(30) (West). For a conviction of possession with intent to distribute, "the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance and did so with the intent to deliver it." *Com. v. Bricker*, 2005 PA Super 307, ¶ 12, 882 A.2d 1008, 1015 (2005). "In determining whether there is sufficient evidence to support a [possession with intent to deliver] conviction, all facts and circumstances surrounding the possession are relevant, and the Commonwealth may establish the essential elements of the crime wholly by circumstantial evidence." *Id.* "Possession can be proven by showing actual possession, i.e., a controlled substance found on the appellee's person, or by showing that the appellee constructively possessed the drug." *Com. v. Macolino*, 503 Pa. 201, 206, 469 A.2d 132, 134 (1983). "Constructive possession has been defined as the ability to exercise a conscious dominion over the illegal substance: the power to control the contraband and the intent to exercise that control," which "may be inferred from the totality of the circumstances." *Id.* "When determining whether a defendant had the requisite intent to deliver, relevant factors for consideration are the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and large sums of cash." *Com. v. Koch*, 2011 PA Super 201, 39 A.3d 996, 1001 (2011) (internal quotation marks omitted). "Additionally, expert opinion testimony is also admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use." *Id.*

The record in this case supports a finding that there was sufficient evidence to convict Appellant of possession of cocaine with intent to deliver. There was 1.10 grams of cocaine base

11

recovered from the car that was driven by Appellant on the night at issue, and Appellant was the sole occupant of this vehicle at that time. *See* N.T. 4/27/15, p. 17; N.T. 2/20/15, pp. 24, 41. This cocaine base was discovered in between the cushions of the driver's seat. N.T. 2/20/15, p. 82. Appellant was seated in the driver's seat when Corporal Mallery approached, leading to an inference that he had both the power and intent to exercise control over the cocaine base. N.T. 2/20/15, p. 24. Also recovered from the car driven by Appellant was $407 in loose cash, and five different cellular phones.[13] N.T. 2/20/15, p. 82. There was also testimony that Appellant was exhibiting strange and nervous behavior, such as trying to divert the officers' attention from the loose cash and shivering on what was stated to be a relatively warm night. *See* N.T. 2/20/15, pp. 23-29, 35. Further, as the Commonwealth's expert testified, no paraphernalia that could be used to ingest cocaine base was found in the car driven by Appellant. N.T. 4/27/15, p. 28. Moreover, there were items indicative of an intent to distribute cocaine base found in the car driven by Appellant, including a piece of cardboard with what seemed to be chemical formulas for manufacturing crack cocaine written on it, and two glass vials, which are commonly used in the sale of crack cocaine. N.T. 2/20/15, p. 82.

Further, based on an analysis of text messages retrieved from the phones recovered from Appellant, Detective Hanks, as an expert in the field of narcotics investigation, testified that he believed at least two of the phones were "being used to conduct drug sales."[14] N.T. 4/27/15, p. 35. By way of example, there was a text message sent to one of the phones recovered from the car driven by Appellant, which partially read "you got loud," and Detective Hanks testified that "loud" is a common code word for crack cocaine. N.T. 4/27/15, p. 33. There was also a group

---

[13] The expert in the field of narcotics investigation, Detective Hanks, testified that "[l]ots of people who are involved in the sales of controlled substances have multiple phones." N.T. 4/27/15, pp. 29-30.

[14] It should also be noted that one of the phones in Appellant's possession continued to ring throughout his interaction with the Quakertown Borough Police. N.T. 2/20/15, p. 28.

12

of text messages sent from one of the recovered phones to multiple recipients that stated "up and running," which Detective Hanks testified that he believed "refer[ed] to [Appellant] having controlled substances in his possession available to sell." N.T. 4/27/15, p. 31.

Ultimately, after an evaluation of all of the facts and circumstances in this case, Detective Hanks testified that he "believ[ed] the cocaine in this case was possessed with the intent to distribute." N.T. 4/27/15, p. 27. Accordingly, based on the totality of the facts and circumstances presented at the suppression hearings and at trial, and viewing this evidence in a light most favorable to the Commonwealth, the verdict winner, all of the elements of possession with intent to distribute were proven beyond a reasonable doubt by the Commonwealth at trial.

Based on the foregoing, we conclude that Appellant's argument that there was insufficient evidence to convict him of possession with intent to distribute lacks merit.

### ii) *Simple Possession of a Controlled Substance*

Appellant also contends that there was insufficient evidence to convict him of simple possession of cocaine. Based on the above analysis in which we concluded that there was sufficient evidence to convict Appellant of possession with intent to distribute, and based upon the cocaine base being in an area of the vehicle under Appellant's control, we find Appellant's contention in this regard to not be meritorious.

### iii) *Criminal Use of a Communication Facility*

The crime of criminal use of a communication facility is set forth under 18 Pa. Stat. and Cons. Stat. Ann. § 7512(a), which states:

> **(a) Offense defined.**--A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act.

13

> Every instance where the communication facility is utilized constitutes a separate offense under this section.

18 Pa. Stat. and Cons. Stat. Ann. § 7512(a) (West). To support a conviction for criminal use of a communication facility, "the Commonwealth must prove beyond a reasonable doubt that: (1) [a]ppellant[] knowingly and intentionally used a communication facility; (2) [a]ppellant[] knowingly, intentionally or recklessly facilitated an underlying felony; and (3) the underlying felony occurred." *Com. v. Moss*, 2004 PA Super 224, ¶ 13, 852 A.2d 374, 382 (2004). "Facilitation has been defined as 'any use of a communication facility that makes easier the commission of the underlying felony.'" *Id.* (quoting *United States v. Davis*, 929 F.2d 554, 559 (10th Cir.1991)).

Based upon the evidence presented at trial, it is clear that Appellant was using at least two of the five cellular phones in connection with his intent to deliver cocaine. At trial, expert witness Detective Hanks testified that his belief that "the cocaine in this case was possessed with the intent to distribute" was largely "based on a series of text messages from the Samsung phone that was recovered at the scene." N.T. 4/27/15, pp. 27-28. As touched on in our above discussion regarding the sufficiency of the evidence in relation to Appellant's possession with intent to distribute conviction, there were examples of text messages read into evidence in which at least two of the cell phones found in the vehicle that Appellant was occupying received text messages apparently soliciting the sale of crack cocaine, and sent outgoing text messages apparently soliciting potential customers for the purchase of crack cocaine. *See* N.T. 4/27/15, pp. 28-35. Further, after analyzing several text message exchanges retrieved from one of the recovered phones, Detective Hanks testified that "based on these conversations, I believe that this phone was being used to conduct drug sales." N.T. 4/27/15, p. 35. Based upon the testimony of Detective Hanks, and the evidence retrieved from the recovered phones that was

14

entered at trial, in addition to the fact that there was sufficient evidence to convict appellant of possession with intent to distribute, it can be inferred beyond a reasonable doubt that Appellant was using, and had used, at least two of the multiple phones that were recovered to contact potential buyers of cocaine and to facilitate drug deals.

Accordingly, we believe that there was sufficient evidence to support Appellant's conviction for criminal use of a communication facility.

## CONCLUSION

For the reasons heretofore stated, we suggest that Appellant's claims on appeal should be dismissed.

BY THE COURT:

2/11/2016
Date

C. THEODORE FRITSCH, JR., J.

N.B. It is your responsibility to notify all interested parties of the above action.

15