J-S68037-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RYAN PHYLLIP BOWERS, | : | |
| | : | |
| Appellant | : | No. 388 WDA 2016 |

Appeal from the Judgment of Sentence February 18, 2016
in the Court of Common Pleas of Mercer County
Criminal Division at No(s): CP-43-CR-0001526-2014

BEFORE: SHOGAN, SOLANO, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED NOVEMBER 30, 2016**

Ryan Phyllip Bowers (Appellant) appeals from the judgment of sentence entered February 18, 2016, after he was found guilty of, *inter alia*, robbery, burglary, two counts of second-degree murder, and third-degree murder. After careful review, we affirm.

The facts pertinent to this appeal are as follows. Appellant was arrested and charged with several crimes stemming from the murder of Michael Anthony Johns (Johns). Appellant and Patrick McCamey (McCamey) arrived at Johns' home with the intention of committing a burglary/robbery. N.T., 5/14-18/2016, at 170-71. Upon arrival, an altercation ensued, ultimately resulting in Johns' death. *Id.* 184-86. Both Appellant and McCamey were stabbed by Johns during the struggle. *Id.* at 170. At trial, Appellant argued McCamey killed Johns because of a personal vendetta,

---

* Retired Senior Judge assigned to the Superior Court

independent of the burglary and robbery committed by Appellant and his cohort. **Id.** at 240-41.

Prior to trial, Appellant filed a motion seeking to suppress statements he made after he was taken to police barracks and read his **Miranda**[1] rights. Appellant averred these statements should be suppressed for, *inter alia*, the troopers' failure to stop the interrogation after Appellant requested counsel. N.T., 2/4/2015, at 28-30. Following a hearing, the suppression court issued findings of fact and conclusions of law denying the motion.

Appellant proceeded to a jury trial, and on February 18, 2016 was found guilty of all charged crimes. On November 25, 2016, Appellant was sentenced to two concurrent terms of life imprisonment for each count of second-degree murder and concurrent terms of imprisonment of 10 to 20 years for third-degree murder and criminal conspiracy respectively.

Appellant timely filed post-sentence motions, properly preserving all issues presented on appeal. Following the denial of these motions, Appellant timely filed a notice of appeal.[2]

Appellant raises the following claims for our review.

1. Did the trial court err in failing to suppress [Appellant's] inculpatory statements made during police custodial interrogation after [Appellant] had orally invoked his right to assistance of legal counsel during the custodial interrogation?

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

[2] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

2. Did the trial court err by failing to instruct the jury at [Appellant's] request that the Commonwealth, to convict [Appellant] of murder of the second degree and/or murder of the third degree, bore the burden of proof beyond a reasonable doubt that [Appellant's] co-defendant did not kill the victim for the co-defendant's personal reasons independent of the charged felonies of burglary and/or robbery?

3. Did the trial court err in failing to determine that the mandatory sentence of a term of life imprisonment for a conviction of murder of the second degree ([*i.e.*] felony murder) is unconstitutional cruel and unusual punishment in violation of the eighth amendment to the United States Constitution and Article 1, Section 13 of the Pennsylvania Constitution because said punishment is grossly disproportional to the crime where the killing is without explicit malice and specific intent to kill another person?

Appellant's Brief at 5-6 (suggested answers and unnecessary capitalization omitted).

We first address Appellant's issue that the trial court erred in concluding that "Appellant did not validly invoke his right to the assistance of counsel before or during the police custodial interrogation[,]" and therefore wrongly denied Appellant's motion to suppress statements made to police during the interrogation. Appellant's Brief at 16.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous.

Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the court[] below are subject to our plenary review.

*Commonwealth v. Perel*, 107 A.3d 185, 188 (Pa. Super. 2014) (quoting

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010)). "Moreover,

appellate courts are limited to reviewing only the evidence presented at the

suppression hearing when examining a ruling on a pre-trial motion to

suppress." *Commonwealth v. Stilo*, 138 A.3d 33, 35–36 (Pa. Super.

2016).

The following principles guide our review if this matter.

In *Miranda v. Arizona*, [the United States Supreme Court] established a number of prophylactic rights designed to counteract the "inherently compelling pressures" of custodial interrogation, including the right to have counsel present. *Miranda* did not hold, however, that those rights could not be waived. On the contrary, the opinion recognized that the statements elicited during custodial interrogation would be admissible if the prosecution could establish that the suspect "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel."

In *Edwards v. Arizona*, [451 U.S. 477 (1981)], [the United States Supreme Court] established a second layer of prophylaxis for the *Miranda* right to counsel: once a suspect asserts the right, not only must the current interrogation cease, but he may not be approached "until counsel has been made available to him,"—which means, [the High Court has] most recently held, that counsel must be present[.] If the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect[] executes a waiver and his statements would be considered

- 4 -

voluntary under traditional standards. This is "designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights[.]"

*Commonwealth v. Hayes*, 755 A.2d 27, 32–33 (Pa. Super. 2000) (citations omitted).

The U.S. Supreme Court has held that in order "[t]o avoid difficulties of proof and to provide guidance to officers conducting interrogations," the determination of whether the right to counsel was invoked by the accused is an "objective inquiry." Effective assertion of the Fifth Amendment right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." However, if the accused makes an *ambiguous or equivocal reference* that would lead an officer, in light of the circumstances, to believe "only that the suspect *might* be invoking the right to counsel," police interrogation *need not cease*. The accused must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney."

*Commonwealth v. Martin*, 101 A.3d 706, 725–26 (Pa. 2014) (citations omitted, emphasis in original).

Instantly, there is no dispute that Appellant was in fact subjected to a custodial interrogation. What is contested is whether Appellant made an affirmative request for counsel. Appellant contends the following statement[3]

---

[3] The audio recording was played at the suppression hearing but per the suppression court's instructions, was not transcribed. A duplicate of the recorded interrogation was provided to this Court as part of the reproduced record.

provided sufficient evidence that he invoked his right to counsel after he was

read his ***Miranda*** rights.[4]

> Trooper Morris:  But I certainly want you to know that you need to tell us the truth through all of this, okay?
>
> Appellant:  I have no problem with telling you the truth.  But, um, I just don't know, I mean put yourself in my [inaudible], I just don't know if it's the best circumstances to say it without a lawyer here, you know, I just don't know, you know what I mean, I don't know, I don't know, I [want to] tell you guys.
>
> Trooper Morris:  Well I'll tell you this is it, this is your only opportunity.  I'm not going to come back and talk to you again, okay… because I'm giving you one opportunity to man up and talk about it.

Recorded Interview of Ryan Phyllip Bowers, September 29, 2014.[5]

Appellant avers he "did more than merely think out loud whether he

should have an attorney.  [Appellant] affirmatively told police that he did not

know whether he should have the assistance and presence of legal counsel

---

[4] At the beginning of the recorded interrogation Trooper Morris stated: "[Appellant], you understand you're being detained right now.  We did- we read you your rights- do you understand your rights?"  Appellant answered affirmatively.  Trooper Morris continued: "Okay, you understand you start talking to us you can stop any time you want to, were not going to make you continue, okay, so whenever you think you want to stop, you just tell us okay?"  Recorded interview of Ryan Phyllip Bowers, September 29, 2014.

[5] After Appellant made inculpatory statements, he explained: "I just didn't know if [] telling you this without a lawyer was going to hurt me or help me or."  Recorded interview of Ryan Phyllip Bowers, September 29, 2014.  At the end of the interview Appellant reiterated that he was "going to be honest with you guys- I mean, I wasn't trying to play hardball, I just didn't know if it's better just to talk to you guys now or wait [until] I had a lawyer present."  ***Id.***  In response, Trooper Morris stated, "well, ultimately that is your decision…"  ***Id.***

for and with him before and/or during the custodial interrogation by the police." Appellant's Brief at 17.

Following a hearing on Appellant's motion, the trial court issued a finding of fact and conclusion of law, wherein the court stated the following:

> Notably, [Appellant] was advised as part of his rights that he had the right to stop the interview at any time. When the troopers began the recording of the statement, they first explained to [Appellant] why he was there, which included a statement that [McCamey] was in the barracks and that they had been talking to him and that he had told them the story and that they wanted to give [Appellant] an opportunity to tell the truth so that he could paint the incident with his version rather than the version that the evidence was showing which was this was a cold-blooded murder. Initially in the interview [Appellant] stated that he wanted to tell them the truth but he wasn't sure that he should be doing it without an attorney. The troopers indicated that this was his first and only chance to tell them the truth if it is contrary to the physical evidence they claimed they had at the time.
>
> [Appellant] then went on to give various versions of what occurred, and after each version the police challenged [Appellant] by indicating that his version was inconsistent with the evidence and that he was not telling them the full truth. They also reiterated that he will be given this chance only once to tell the truth and that it could be the difference between life imprisonment as the evidence seemed to point to, versus perhaps a 10 to 20 year sentence. [Appellant] continued to talk freely with the troopers during the recorded interview refining the story as he went along until he ultimately appeared to give a full version of what occurred. At no time during the recorded interview did [Appellant] unequivocally ask for an attorney and/or exercise any of his rights. "[T]he Fifth Amendment right to counsel must be specifically invoked."

Findings of Fact, Conclusions of Law, and Order, 3/13/2015, at 7-8 (unnumbered, citation removed).

Upon review, we find the trial court's conclusions are supported by the record. Specifically, we conclude Appellant's pondering aloud "if it's the best circumstances to say it without a lawyer here" did not affirmatively invoke his right to counsel. Not only do Appellant's words fail to express sufficiently a desire for the assistance of counsel, we find his statements did not include the affirmative language that would make an officer objectively believe Appellant was requesting a lawyer. *See Davis v. United States*, 512 U.S. 452, 453 (1994) (holding "that [defendant's] remark—'[m]aybe I should talk to a lawyer'—was not a request for counsel.").[6] No relief is due.

Next, Appellant asserts the trial court erred when it refused to issue a specific jury instruction requested by defense counsel. Appellant's Brief at 21. While deliberating, the jury submitted a question to clarify the Commonwealth's burden in disproving Appellant's defense theory that McCamey had murdered Johns for personal reasons. 5/14-18/2016 at 326. The trial court provided the jury with a supplemental instruction, and defense counsel objected. Specifically, counsel sought to have the trial court reissue an instruction given before deliberation, and requested the court clarify the Commonwealth's burden with respect to the third-degree murder

---

[6] Furthermore, we reject Appellant's argument that after his inquiry regarding an attorney, the troopers were obligated to ask clarifying questions to determine if Appellant was asserting his right to counsel. *See Martin*, 101 A.3d at 726 (finding that while "stating that it would be 'good practice' for police to further question the accused to clarify ambiguous references to counsel, the [United States Supreme Court] specifically declined to adopt a rule requiring officers to ask clarifying questions").

charge. *Id.* at 330-31. The trial court denied Appellant's request, relying on the court's supplemental instruction and the prior general instructions given to the jury before deliberation began. In arguing that the supplemental instruction given by the trial court was inadequate, Appellant contends the instruction "did not tell the jury expressly, specifically[,] and directly that the Commonwealth did bear such a burden of proof on the charge of [second-degree murder]." Appellant's Brief at 29.

> [I]n reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this [C]ourt to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case.

*Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa. Super. 2006) (citations omitted).

The record reflects that prior to the commencement of their deliberations, the trial court provided lengthy instructions to the jury and specifically set forth the Commonwealth's burden. *See* N.T., 5/14-18/2016, at 272-75. While discussing the elements needed to prove second and third-degree murder, the trial court stated, in part, the following:

> [S]o to find [Appellant] guilty of second[-]degree murder, that is felony murder, you must find that the following four elements have been proven beyond a reasonable doubt. First, that [McCamey] killed [Johns]; second that he did so while he and [Appellant] were partners in committing or attempting to commit robbery and/or burglary; third, that [McCamey] did the act that killed [Johns] **in furtherance of the robbery and/or burglary**; and fourth that the defendant was acting with malice.

- 9 -

\* \* \*

You heard me mention the phrase of "in furtherance of the crime of burglary or robbery." The phrase "in furtherance of"; **in furtherance of does not include all acts committed by a partner. A partner's act that kills is not in furtherance of the felony if the partner does the act for his own personal reasons that are independent of the felony. Therefore, you must find [Appellant], not guilty of second[-]degree murder if you find that [McCamey] killed [Johns] for personal reasons independent of any felony as the defense argues.**

\* \* \*

And last, we have third degree murder … To find [Appellant] guilty of this offense, you must find the following three elements have been proven beyond a reasonable doubt. First that [Johns] is dead; second, that [Appellant and/or] his accomplice intentionally and knowingly or recklessly engaged in conduct that caused the death of [] Johns; and third, that [Appellant] and/or his accomplice did so with malice.

\* \* \*

If you were to find that [McCamey] was acting in the killing of [Johns] for his own personal reasons independent of what else was going on, based upon all of the totality of the circumstances, that may also [] not establish proof beyond a reasonable doubt that [Appellant] was an accomplice to murder of the third degree. You would have to examine all of the facts and circumstances and see if that's even in the case or how it fits in.

*Id.* at 307, 318 (emphasis in original).

While deliberating, the jury asked the following question: "Regarding both or either [second or third-degree murder], is there a burden of proof on the part of the prosecution to prove that McCamey did not kill for personal

reasons independent of the burglary/robbery?" *Id.* at 326. In response, the trial court gave the following supplemental instruction:

> That's a good question, that's a tricky question. I have to start out by telling you, of course, that the burden of proof is always on the government, and what they have to prove beyond a reasonable doubt is each and every element of the offenses for which he's charged. On the second[-]degree murder charge, we're talking about a killing that occurs while felonies are going on or just after it. **So, it's in the course of committing or during the commission of that I think you're concerned with. The government has that burden to prove that the killing occurred in furtherance of the burglary and furtherance of the robbery.** The fact that there may be other evidence or explanations that [may be] given somewhere in the evidence is for you, first of all, to decide what, if any, there is, what weight to give it, and do that within the circumstances of all of the evidence physical and testimony that you've received, applying the weight and the credibility to it and decide whether they met the burden of proving whether the killing was in furtherance beyond a reasonable doubt.
>
> As to murder of the third[-]degree, the in furtherance of language is not in there because that has nothing to do with committing another felony, that's just murder based upon the elements of third[-]degree murder, it's every other intentional killing other than first[-]degree murder and felony murder.. So, on that degree you would have to find that [Appellant], if you're thinking that McCamey is the actual person who committed the act, and did the killing, then the only way you can convict him of murder three is by accomplice liability and the burden of proof is on **the government to prove beyond a reasonable doubt that [Appellant] was acting as an accomplice in a third[-]degree murder, and of course, if your conclusions are that they have not met that burden of proof whether it's because you accept an alternate version, that perhaps it may have occurred by somebody else going off on his own independent killing, then unless he's an accomplice to that he can't be guilty of murder of the third[-]degree.** So, the government has to prove whatever you find the facts are that he was an accomplice to assist in murder of the third degree.

- 11 -

So you have to examine their evidence based on their burden as to the elements of that offense, and the element here is accomplice liability. What, if anything, did he do as an accomplice to assist, aid, abet in murder of the third[-]degree if you're finding that [McCamey] did it.

*Id.*at 326-29 (emphasis added).

In response to Appellant's contention that the court's supplemental instruction failed to set forth adequately the Commonwealth's burden, the trial court stated the following:

Defense counsel took exception to this instruction at sidebar, arguing essentially that the [trial court's] instruction should be worded differently, *i.e.*, that the Commonwealth bears the burden of proving that the killing was not for personal reasons independent of the robbery and/or burglary. Notably, defense counsel was not arguing that the instruction was wrong; he simply wanted it to go further and to tell the jury directly that the government must prove the killing was not for an independent reason. The trial court did not give any such further instructions regarding this question.

Defense counsel's exception, [deals] with semantics. The trial court instructed the jury throughout the general instructions and again in response to [the jury's question, that] the government always bore the burden of proof. The jury was given general instructions (without objection) of what elements the government had to prove. The [trial court] also made it clear in response to [the question] that the prosecution has the "burden to prove that the killing occurred in furtherance of the burglary and furtherance of the robbery." The jury would only be left with a single directive on the law, i.e., that only the prosecution bore any burden of proof as to the elements of each offense and if the co-defendant committed the killing outside of the felony acts or for personal reasons, then it did not meet its burden and they must find defendant not guilty of felony murder. . .

In addition, as to third[-]degree murder, the jury was instructed during the final instructions and in response to its [] question, that the Commonwealth had to prove that [Appellant]

was an accomplice to find him guilty. But they must find him not guilty if "somebody else [was] going off on his own independent killing, then unless he's an accomplice to that he can't be guilty of murder of the third degree."

Thus, the [trial court] finds that defense counsel's suggested language is simply a different way to express the law, and that the instructions by the [trial court] left no room for the jury to be confused that they could find [Appellant] not guilty of either murder if it was either an independent act of the codefendant or the prosecution did not prove that [Appellant[ was acting as an accomplice to third degree murder, or the killing did not occur in furtherance of the alleged robbery or burglary.

Memorandum and Order, 2/18/2016, at 12-13.

We agree that the trial court adequately answered the jury's inquiry and concisely set forth the Commonwealth's burden. In concluding that the trial court did not abuse its discretion, we note that

[w]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

**Commonwealth v. Antidormi**, 84 A.3d 736, 754 (Pa. Super. 2014) (citation omitted). Here, without addressing Appellant's proposed alternative language, we find the trial court clearly, adequately, and accurately presented the law and provided ample instruction in response to the question asked by the jury. No relief is due.

- 13 -

Lastly, we address Appellant's issue regarding the constitutionality of his sentence to life in prison for second-degree murder. Appellant contends that

> [i]t is grossly disproportional to legislate a mandatory sentence of [] life imprisonment without parole for a conviction of murder of the second[-]degree committed during certain felonies but which is not an intentional killing of another, in which there is no specific intent to kill another, there is no actual malice towards the other, and in which there is no willful, deliberate, and premediated killing of another, when the same mandatory sentence of a term of life imprisonment is the legislated default sentence for a conviction for a criminal homicide of another which is committed by intentional killing[.]

Appellant's Brief at 34-35. Additionally, Appellant cites **Miller v. Alabama** 132 S. Ct. 2455 (2012), arguing that even though he was 23 years old at the time of the offenses outlined *supra*, the findings in **Miller** concerning "the incomplete development of the human brain and its judgmental reasoning capabilities and capacities in young persons" are also applicable to a 23 year old male. Appellant's Brief at 32-33. "[T]he mandatory life sentence without the possibility of parole completely ignores these biological and physiological realties[.]" **Id.** at 33.

Appellant's issue challenges the legality of his sentence. **Commonwealth v. Henkel**, 938 A.2d 433, n. 14 (Pa. Super. 2007).

> [T]he selection of the penalty of life imprisonment, being a legislative determination, carries a strong presumption of validity, and of constitutionality. "Therefore, in assessing a punishment selected by a democratically elected legislature against the constitutional measure, we presume its validity. [A] heavy burden rests on those who would attack the judgment of the representatives of the people."

***Commonwealth v. Middleton***, 467 A.2d 841, 846 (Pa. Super. 1983) (citations omitted).

In concluding Appellant's final issue does not entitle him to relief by this Court, we our guided by our holding in ***Henkel***, which addressed the same issue presently raised by Appellant, "that the imposition of a life sentence for second-degree murder constituted cruel and unusual punishment under both the United States and Pennsylvania Constitutions."[7] ***Henkel***, 938 A.2d at 446.

> Nearly 25 years ago, in ***Commonwealth v. Middleton***, [] this Court dismissed a constitutional challenge identical to the one presented by [appellants] and stated:
>
>> The offense of felony-murder is undoubtedly one of the gravest and most serious which can be committed. The taking of a life during the commission of an enumerated felony demonstrates a disregard for the property, safety, sanctity, integrity, and especially, the life of the victim. It is a crime of archviolence. Clearly, such an offense merits a severe penalty.

***Id.*** at 446–47.

As in ***Henkel***, we too find Appellant has provided no reason for us to revisit our well-established precedent.[8]  Furthermore, Appellant's attempt to implicate ***Miller*** is likewise unavailing.  The Supreme Court in ***Miller*** held that "mandatory life without parole for those under the age of eighteen at

---

[7] ***See*** Pa. Const., Art. I, § 13 and U.S. Const. amend. VIII.

[8] Our Supreme Court, in *dictum*, harshly criticized the felony-murder rule in ***Commonwealth ex rel Smith v. Myers***, 261 A.2d. 550 (Pa. 1970). Appellant does not argue the issues raised therein.

the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" ***Miller****,* 132 S.Ct. at 2460. Appellant was not a juvenile at the time of the offense, and is therefore unable to benefit from the holdings in ***Miller***.

Thus, after a thorough review of the record and briefs in this case, we are unconvinced that any of Appellant's arguments entitles him to relief.[9]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/30/2016

---

[9] There appears to be a question as to the legality of Appellant's sentence, considering he was found guilty and sentenced to three counts of murder arising from the death of one victim. However, this issue has not been raised by Appellant on appeal. Given the apparent complexity of this issue, we decline to consider it *sua sponte*. ***See Commonwealth v. Wolfe***, 106 A.3d 800, 801 (Pa. Super. 2014) ("We begin by noting that a challenge to the legality of the sentence can never be waived and **may** be raised by this Court *sua sponte*.") (emphasis added).